212 P.2d 1001

**KENNECOTT COPPER CORPORATION v. INDUSTRIAL COMMISSION et al.**

**In re CASAS.**

No. 5222.

Supreme Court of Arizona.

Jan. 4, 1950.

Fennemore, Craig, Allen & Bledsoe, of Phoenix, for petitioner.

H. S. McCluskey, of Phoenix, Robert E. Yount and Donald J. Morgan, Phoenix, of counsel, for respondents.

DE CONCINI, Justice.

On or about July 13, 1948, Juan P. Casas, hereinafter called the applicant, being employed by Kennecott Copper Corporation, hereinafter called the petitioner, sustained an injury to his right hand, arising out of and in the course of his employment, when a rock fell on the end of his second finger causing a traumatic amputation of part of the distal phalange. He was taken to the company hospital at Ray, Arizona, where the company surgeon amputated the condyles at the distal end of the middle phalange of the finger.

After a hearing and rehearing of the applicant's claim, The Industrial Commission of Arizona, hereinafter called the commission, awarded compensation in accordance with section 56-957, A.C.A.1939, for the loss of the entire finger.

The petitioner brings this case here for review on the ground that the commission was in error in holding that the amputation of the distal end of the middle phalange of applicant's finger, under the facts disclosed, was the loss of more than one phalange of the finger within the meaning of paragraph 7 of section 56-957, subdivision (b), A.C.A.1939.

Petitioner contends that the commission should have made the award under the provisions of paragraph 6 of section 56-957, subdivision (b), allowing compensation for only one-half of the loss of the finger.

The sole question before this court is whether the award should have been for the loss of one-half of the finger or for the loss of the entire finger. The applicable provisions are paragraphs 6 and 7 of section 56-957, subdivision (b), A.C.A.1939, which read as follows:

"6. The loss of a distal or second phalange of the thumb or the distal or third phalange of the first, second, third or fourth finger, shall be considered equal to the loss of one-half of such thumb or finger, and compensation shall be one-half of the amount specified for the loss of the entire thumb or finger.

"7. The loss of more than one phalange of the thumb or finger shall be considered as the loss of the entire finger or thumb, but in no case shall the amount received for more than one finger exceed the amount provided for the loss of a hand."

The commission in its findings and award interpreted the words, "The loss of more than one phalange of the thumb or finger * * *", in the statute, set out above, to mean the loss of more of the finger than one phalange, however slight, as being equivalent to the loss of the entire finger. We hold that the commission erred in so construing the said statute.

In arriving at our decision, there are several well-established rules and concepts to be considered. The first of these is the provision of section 1-103, A.C.A.1939, which reads:

"General rules of construction.—In the construction of the laws of the state, the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislative powers:

"1. Words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning."

In view of the above statute and other considerations to be subsequently discussed, the only proper construction of the aforesaid statute is that there must be a loss of more phalanges than one phalange before the applicant is entitled to compensation for the entire finger.

The Superior Court of Delaware in the case of Wilson v. Bethlehem Steel Co., 40 Del. 157, 7 A.2d 906, 908, construed the words, "loss of more than one phalange", in a statutory provision similar to ours, in the following manner:

" * * * The word 'more', is used adjectively and not adverbially. Gramatically, the meaning of the phrase, 'the loss of more than one phalange', is the loss of more phalanges than one phalange. * *

"The construction contended for by the appellant, that the loss of the distal phalange of a thumb plus the smallest portion of the proximal phalange is, in contemplation of the law, the loss of the entire thumb, is not justified. The Court may not suppress statutory language in the interest of liberality of construction."

■ We have held repeatedly that the Workmen's Compensation Act will be liberally construed to effect its purposes. However, we will not, in the interest of liberality, amend the compensation law by judicial construction. This court in the case of Tovrea Packing Co. v. Tapia, et al., 63 Ariz. 503, 163 P.2d 852, 855, holding that compensation is payable where the loss is of substantially all of the distal phalange so that the phalange is lost for all practical purposes, has said:

" * * * We hold that it is not necessary that every portion of the first phalange be lost to be compensable; yet we do hold that it is necessary to show that sub-stantially all of the first phalange has been lost. We are content to believe that such a construction of the section is a liberal one, though not sanctioned by the literal wording of the law. To go further would do violence to the plain language of the statute. The statute is always subject to amendment by the legislature. In the exercise of a sound judicial discretion it is important that the law be not amended by judicial construction."

■ The reasoning of this court in the case of Tovrea Packing Co. v. Tapia, supra, is applicable here in so far as it indicates that before loss of part of a phalange is compensable, a substantial portion of that phalange must be lost so that the worker is deprived of the benefit of that phalange.

■ The evidence in this case definitely establishes that amputation of the distal end of the middle phalange of the second finger was not necessary by reason of damage to that phalange resulting from the accident, but was done as a matter of choice in the interest of good surgery. The amputation could have been at the articular surface of the phalange and the result obtained by either method would have given a serviceable finger, but with amputation through the distal end of the phalange a less knob-like end is procured, thereby leaving the applicant with a pad of flesh and a much more serviceable finger.

In a New York case construing a New York Workmen's Compensation Law pro-

vision providing that "the loss of more than one phalange shall be considered as the loss of the entire thumb or finger," section 15, subd. 3, amended by Laws 1917, c. 705, § 3, the New York Supreme Court held as follows: " * * * If the sentence means that the loss, however slight, of more than one phalanx of a thumb or finger, shall entitle a claimant to an award of compensation for the loss of the entire thumb or finger, then the taking off of the most minute sliver of the second phalanx, without regard to whether it in fact disabled the second phalanx, would entitle the claimant to an award for the loss of an entire finger. However, if the sentence should be construed as requiring the loss of more phalanxes than one in order to constitute the loss of an entire finger, then the loss of a portion of the second phalanx must be so substantial as to entitle the claimant to an award, if it were the only phalanx injured. * * *" Baron v. National Metal Spinning & Stamping Co. et al., 182 App.Div. 284, 169 N.Y.S. 337, 338.

Respondent, Industrial Commission, cites the case of Chicago, Wilmington & Franklin Coal Co. v. Industrial Commission et al., 399 Ill. 76, 77 N.E.2d 184, 186, as supporting the commission's position that the exercise of the surgical choice of operating at the distal end of the second phalange, just behind the condyles of the second joint, in order to produce a more serviceable appendage by eliminating the knob-like stump and producing a better pad at the point of amputation, entitles the injured employee to receive compensation for loss of two phalanges. However, a careful reading of that case will show that in addition to the amputation above described, the evidence was that " * * * the proximal joint was limited in motion. * * * For all practical purposes Sarapin has suffered the complete loss of the use of his right index finger. * * *" Furthermore, the Illinois court actually subscribed to the view that before compensation can be had for the loss of more than one phalange, the second phalange must be substantially impaired.

Such is not the condition of the applicant in this case. The surgical choice was the best. The removal of the distal end of the second phalange was to the advantage of the applicant under the circumstances. Therefore it would be unwise to penalize for good surgery by charging the employer for the loss of two (2) phalanges when the applicant suffered only the loss of one.

Award is set aside.

LA PRADE, C. J., and UDALL, STANFORD, and PHELPS, JJ., concurring.