TERRELL, Justice.
December 31, 1954, the claimant while employed by the Peoples Water & Gas Company suffered a left inguinal hernia which was surgically repaired January 14, 1955. January 26, 1956, while employed by the same employer, the claimant was pulling on a heavy wrench to loosen a large union to remove a meter, the wrench slipped and struck claimant in the groin, causing a second hernia, which was surgically repaired February 14, 1956. In July, 1956, claimant’s hernia reappeared without precipitating incident but that hernia was on May 27, 1957, surgically repaired at the expense of the carrier.
Approximately eight weeks after the last herniorrhaphy the claimant’s hernia again appeared without any precipitating exertion on the claimant’s part. The carrier accepted responsibility for repair of that hernia, but the claimant refused to undergo surgery to repair it. Claim was filed for bene *746 fits outside the hernia statute, § 440.15(6) (f). A hearing was held by the deputy commissioner who on July 25, 1958, held that claimant’s refusal to undergo surgery was unreasonable. On appeal this order was affirmed by the full commission January 16, 1959.
April 3, 1959, the claimant again submitted to surgery by Dr. Robert Dickey in which claimant’s left testicle was removed, it having become atrophied and devoid of physiological value. At this time wire sutures were used to repair the hernia. Eight months later claimant was examined by Dr. Dickey and was found to have a small blow-out hernia (direct hernia) about a centimeter and a half in diameter in the lower part of a previous incision. Dr. Dickey recommended that this blow-out hernia be repaired by an additional one or two wire sutures.
The claimant again refused to undergo surgery and filed petition for modification asking for benefits under § 440.15(3) (u), Florida Statutes, F.S.A. A hearing was held by the deputy commissioner, who on November 10, 1960, entered an order finding that the claimant’s refusal to undergo further surgery was not unreasonable, and that the claim was governed by § 440.15(3) (u), Florida Statutes, F.S.A. It was further found that claimant has a 25% permanent partial disability of the body as a whole. An attorney’s fee of $700 was awarded. The employer appealed this judgment to the full commission, alleging that the deputy commissioner failed to make sufficient findings of fact with regard to claimant’s age, education, occupational history, past injury earnings, nature and extent of claimant’s anatomical impairment or other necessary factors on which to base his conclusion and for various other reasons. June 20, 1961, the full commission entered its judgment reversing the order of the deputy commissioner and remanding the cause to him for further proceedings and entry of an appropriate compensation order consistent with the views expressed by the full commission.
We are confronted with an appeal by certiorari from the order of the full commission.
The principal point for determination as agreed by both parties is as follows: Where a claimant suffers a hernia as a direct result of an industrial accident in the course of his employment and undergoes four unsuccessful surgical operations for the hernias and, in addition, surgery for the removal of a testicle, should he be awarded disability under § 440.15(6), Florida Statutes, F.S.A. (hernia section), or § 440.15(3) (u), Florida Statutes, F.S.A. (loss of wage-earning capacity section) ?
The answer to the question presented turns on the interpretation of the cited statutes. We initiate this opinion by quoting the pertinent part of said statutes as follows:
440.15(6) (f) “All hernia, inguinal, femoral, or otherwise, so proved to be the result of an injury by accident arising out of and in the course of the employment, shall be treated at the expense of the employer in a surgical manner by radical operation. Compensation shall be paid for a period of six weeks from the date of the operation. In case the injured employee refuses to undergo the radical operation for the cure of said hernia, no compensation will be allowed during the time of refusal. This shall not apply to those who by religious belief do not use medical or surgical treatment. If, however, it is shown that the employee had some chronic disease, or is otherwise in such physical condition that the commission considers it unsafe for the employee to undergo said operation, the compensation shall be paid as otherwise provided in subsection (4) of § 440.15, but not for exceeding thirty weeks. Compensation shall be allowed for temporary total disability as provided by subsection (2) of this section for such disability before the operation.”
*747 § 440.15(3) (u) “Other cases: In all other cases in this class of disability the compensation shall be sixty per cent of the injured employee’s average weekly wage for such number of weeks as the injured employee’s percentage of disability is of three hundred fifty weeks.”
It is pointed out herein that this is the fifth time an operation for hernia on the part of petitioner has been recommended and the last time was refused by him because of his dread of surgery. After testimony on this point, the deputy commissioner entered the following order:
“5. That as a direct and proximate result of said initial industrial accident, the claimant, Charles C. Sherman, Jr., has had five (5) hernia recurrences with four (4) unsuccessful surgical operations, which resulted in the claimant losing his left testes. That the claimant has sustained permanent partial disability to the extent of 25 per cent of the body as a whole based upon the fact that the claimant is now unable to compete in the open labor market with other men of his age, education and ability, that he has sustained a diminished earning capacity and is presently unable, because of his physical and functional limitations to do the necessary lifting, bending, stooping, required of him in the conduct of the duties of his business.
“6. That to require the claimant to undergo a fifth (5th) major surgical procedure would not be justified on the basis of claimant’s sincere, genuine and honest fear to submit to further surgery and further relying on the past history of skillful surgery and proven past unsuccessful results. The Deputy Commissioner finds that the claimant’s refusal to undergo surgery for a fifth (5th) time was not unreasonable.”
This was the order which on appeal was reversed by the full commission on the theory that § 440.15(6) (f), the hernia statute, is all inclusive and controls the remedy for hernia. Respondents further point out that claimant’s physical condition is such that he is able to undergo further surgery; that he has no religious scruples against doing so and that the record is devoid of evidence excusing claimant from undergoing further surgery.
In entering the order which the full commission reversed, the deputy commissioner relied largely on the following testimony by Dr. Harold Milton Ungee:
“Q. All right, Doctor, would you recommend surgery in this particular case for repair of this hernia?
“A. At this time, no.
“Q. Would you give me your reasons ?
“A. Yes. We have seen this size recurrent hernia without symptoms. The degree of symptoms which Mr. Sherman has and the emotional response which he has, I think would militate against a good result.
“Surgically speaking, from the technical standpoint, I am sure this bulge could be put back inside and kept inside, with some difficulty, but could be done. But I am not convinced that it would relieve the amount of pain he has. This type of burning sharp pain is even present at rest, indicating it may be from the repeated surgery than from the actual small bulge present.
“We see this type of pain with involvement of the nerves in that area, irritated or inflamed from repeated surgical procedures. And I am not convinced in my mind from this one examination, from talking with him, that removing the scar and repairing the bulge would actually relieve his symptoms. And I know it would exert an emotional hardship. Say this is on a surgeon’s opinion and that I feel any mental or emotional response *748 would have to be evaluated by someone better qualified than I, but to take the whole picture, I would feel he would not be interested at this time.
“I should leave this one reservation. Since the mechanical part of the hernia could be repaired surgically, if the patient decided on a voluntary basis and emotionally he wanted to have it done, I think he could get a good result. Whether it would relieve his pain or not would have to be determined after the surgery. It would be a gamble in that sense * *
Considered as a whole, this evidence shows that account of emotional response and the degree of symptoms the claimant has would militate against a good result. If, however, said the doctor, the “mechanical part of the hernia could be repaired surgically, if the patient decided on a voluntary basis and emotionally he wanted to have it done, I think he could get a good result. Whether it would relieve his pain or not would have to be determined after the surgery. It would be a gamble in that sense.”
The deputy commissioner rejected the idea the claimant’s remedy was controlled by § 440.15(6) (f), Florida Statutes, F.S.A., but held rather that it was controlled by § 440.15(3) (u), Florida Statutes, F.S.A., having to do with the loss of wage earning capacity. Claimant further contends that this is not a simple hernia but that it is a case which falls under the holding of this court to the effect that all doubts should be resolved in favor of the claimant and the governing act construed liberally to effect the purpose for which it was enacted. Wick Roofing Company v. Curtis, Fla.1959, 110 So.2d 385; Dennis v. Brown, Fla.1957, 93 So.2d 584; Naranja Rock Co. v. Dawal Farms, Fla.1954, 74 So.2d 282.
We have examined Padrick Chevrolet Company v. Crosby, Fla.1954, 75 So.2d 762, 763; Craftwood Products, Inc. v. Schuchard, Fla.App.1959, 115 So.2d 206; Royal Palm Market v. Lutz, Fla.1961, 126 So.2d 881, and Spear v. Brockway Motor Co., 1959, 9 A.D.2d 799, 192 N.Y.S.2d 766, relied on by claimant, and while they have to do with what might be called kindred aspect, not in point with the case at bar, they do not militate against being persuasive of the claimant’s contention. In the Crosby case, supra, we said that “it should be noted that section 440.15(6), supra, does not, in terms, preclude a person who suffers from a herniated condition from recovering compensation when that condition is aggravated by a subsequent accident. All that the statute does is prevent an employee with a pre-existing hernia from claiming, in event of accident, full compensation as for a ‘hernia resulting from injury by an accident,’ and leaves such employee to his remedy under section 440.02(19), Florida Statutes 1951, F.S.A. * *
In this connection, it is pertinent to direct attention to the liberal exception to § 440.15(6) (f), supra, which provides: “If, however, it is shown that the employee had some chronic disease, or is otherwise in such physical condition that the commission considers it unsafe for the employee to undergo said operation, the compensation shall be paid as otherwise provided in subsection (4) of § 440.15, but not for exceeding thirty weeks.”
There is evidence in the record contrary to that of Dr. Ungee quoted herein, but it was not relied on by the deputy commissioner who saw fit to enter an order holding that claimant’s refusal to submit to a fifth operation to repair the hernia was not unreasonable. His reasons are detailed in his order and we think contemplated by the words “or is otherwise in such physical condition that the commission considers it unsafe for the employee to undergo said operation, the compensation shall be paid as otherwise provided in subsection (4) of § 440.15, F.S., but not for exceeding thirty weeks.”
*749 The full commission did not agree with the deputy commissioner on this point hut the deputy commissioner had the claimant before him, saw the witnesses testify, was familiar with the applicable statute and with all these factors at his hand, was in better condition to equate these factors than was the full commission. The deputy commissioner resolved the doubt in favor of the claimant. ¡When the pertinent provisions of the statute, the quoted evidence of Dr. Ungee and the finding of the deputy commissioner on the evidence are read together, they justify the order of the deputy in so far as it relates to this particular problem.
With respect, however, to the question of loss of earning capacity, the compensation order of the deputy commissioner fails to contain any findings of fact with reference to such question. The commissioner obviously based his determination of a 25% loss of earning on his finding of 25% disability to the body as a whole. This is contrary to the requirements set forth by this court in Ball v. Mann, 75 So.2d 758. To support an award of this kind there must be a finding by the deputy in the manner prescribed by decisions of this court of claimant’s loss of earning capacity. The deputy’s order is deficient in this respect.
In consideration of the foregoing, the order of the full commission is vacated with directions to reinstate the order of the deputy commissioner with respect to his finding of 25% disability of the body as a whole and remand the cause to the deputy for the purpose of making sufficient findings of fact with reference to claimant’s loss of earning capacity with leave to said deputy to take additional testimony upon said question if such should be found to be necessary.
It is so ordered.
ROBERTS, C. J., and TERRELL, THOMAS, DREW and HOBSON (Ret.). JJ., concur.
THORNAL and O’CONNELL, JJ., dissent.