411 P.2d 462

Homer CORRIER, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona and Arizona Brewing Company, Inc., Respondents.

No. I CA–IC 55.

Court of Appeals of Arizona.

Feb. 28, 1966.

Rehearing Denied April 11, 1966.

Review Denied May 10, 1966.

Chris T. Johnson, Phoenix, for petitioner.

Robert K. Park and Joyce Volts, Phoenix, for respondents.

CAMERON, Judge.

This is a writ of certiorari to review an award of the Industrial Commission denying certain additional compensation benefits to the claimant Homer Corrier.

We are called upon to determine the effect of an inoperable hernia upon a scheduled disability to the right shoulder, and to determine whether claimant's petition to reopen was timely filed.

The facts necessary for a determination of this matter are as follows: Petitioner was injured on or about 14 September, 1959. He was 69 years old at the time of the injury. He suffered an injury to his right shoulder and sustained a left inguinal hernia. The claim for the hernia was accepted on 17 November, 1959, and petitioner was informed by letter:

"Under the terms of the Workman's Compensation Law, a hernia such as suffered by you is considered to be an aggravation of a pre-existing condition and compensation may be allowed as such for time lost only to a limited extent, depending on the nature of the proof submitted, but not to exceed two months.

"Therefore, it should be understood that in accepting liability in your case, our acceptance is governed entirely by the code provision relating to hernia, and the limitation will apply, even though the period of disability may extend beyond such period."

The medical reports indicate that the petitioner suffered from a heart condition which made any operation for repair of the hernia inadvisable. There is no question that both the shoulder injury and the her-

nia were the result of the industrial accident.

Findings and award for scheduled permanent disability were issued 27 February, 1961, finding that the claimant had suffered a permanent partial disability equal to "65% loss of function of the right major arm". No mention was made of the hernia condition in that award, and although the brief of the respondent Industrial Commission contends otherwise, the response filed by the Commission to the writ of certiorari, as well as the file, indicates that to this date no payment has been made to petitioner for the hernia.

On 10 February, 1964, claimant applied for a reopening of his claim seeking additional treatment of his arm and asking that that the hernia be repaired. The Commission found that the permanent partial disability was equal to an 80% loss of function of the right (major) arm, and that said applicant was entitled to additional compensation. No mention was made of the hernia in that award. Claimant partitioned for rehearing and a hearing was held at Phoenix, Arizona, 3 August, 1964. At the hearing, the following testimony was given by Dr. Robert P. Leonard, who had examined petitioner in March of 1960 and again in March of 1964:

"Question: What is the prognosis for the hernia condition?

"Answer: It will worsen. If he were able to retain it and did no lifting, no exertion, the hernia might remain static. However, he has shown the typical course of these things in that it is progressing. It was quite small in 1960, is now considerably larger and he can't contain it with the truss he wears.

"Applicant: It is much larger than when you saw it last now.

"Referee: (Question) Is there any medical treatment that the man can be afforded?

"Answer: There is no real way one can contain this hernia. I have in the past operated on such hernias in similar individuals who were under local anesthesia, and had successful results. But this particular patient's cardiologist, Dr. Joseph Ehrlich, is very adamantly opposed to anything being done unless it is an essential lifesaving procedure. For this reason, as well as the known high risk involved in the surgical correction here. In fact, I would be extremely reluctant to undertake a surgical repair of such a patient unless absolutely pushed into it. They have been done successfully.

Here you have the situation where there is a very poor risk with a worsening condition. He feels that he has to have something done in order to return to work. The doctors feel that the hazards are a little too great to undertake this. This has been their recommendation as well as my own."

On 17 September, 1964, the Commission issued its findings and award affirming the previous award and further finding that:

"This Commission denies reopening for hernia repair due to the non-industrial cardiac condition."

On 13 April, 1965, the claimant again petitioned the Industrial Commission for readjustment or reopening of claim. The Commission denied opening of claim, and claimant again petitioned for a hearing. The Commission on 14 June, 1965, again denied rehearing. On 21 June, 1965, petitioner was represented for the first time by an attorney, and after objection and request for additional findings the petitioner brought this writ of certiorari.

■ It is the position of the Commission, that the award of 17 September, 1964, is final and res judicata and that therefore the Commission is without jurisdiction to consider the matter further in absence of new, additional or previously undiscovered evidence as to a change in his physical

condition or (in case of an unscheduled disability) as to his loss of earning capacity. Adkins v. Industrial Commission, 95 Ariz. 239, 389 P.2d 118 (1964); Steward v. Industrial Commission, 69 Ariz. 159, 211 P.2d 217 (1949). With this we do not agree. Even assuming that the hernia statute precludes the consideration of petitioner's condition as an "unscheduled" disability, the record indicates that petitioner has received no payment as and for the hernia injury:

> "Assuming that the 14 weeks in this award was covered by the time expiring in some portion of the temporary award in that case, we cannot agree that it precludes a recovery for the statutory amount allowed for hernia * * *." Wilkerson Chevrolet Inc. v. Mackey, Okl., 367 P.2d 165, 168 (1961).

Following this rule of law the Commission, having quite properly taken jurisdiction of the hernia, must make an award for the hernia before the matter may be closed.

■ On the other hand, if we find (as we do below) that the hernia when coupled with the shoulder injury results in an unscheduled rather than a scheduled disability then the fact that, as here, the hernia injury is not stationary would leave the Commission with continuing jurisdiction to evaluate the petitioner's total disability until such time as his condition becomes stationary. Aluminum Company of America, etc. v. Industrial Commission, 61 Ariz. 520, 152 P.2d 297 (1944).

We next concern ourselves with the question of the effect of the hernia upon the scheduled disability to the shoulder. For the purposes of payment of permanent partial disability compensation, 23–1044 A.R.S. divides injuries into two categories. Subsection B provides for compensation of certain disabilities which are commonly called "scheduled disabilities" and awards made thereunder are called "scheduled awards". The so-called "scheduled awards" provided for compensation in addition to temporary partial disability for 55% of the workman's average monthly wage for the period of time listed in the various paragraphs of subsection B of 23–1044. Petitioner's arm injury standing alone would be considered a "scheduled disability" under paragraph 21 of subsection B. In the instant case, petitioner having suffered an 80% loss of his right (major) arm was entitled in addition to an amount for temporary partial disability to an amount equal to 50% of his average monthly wage for 80% of 60 months (or 48 months). [23–1044, subsec. B, pars. 13 and 21 A.R.S.] This was the basis of the award of 1 April, 1964.

Subsection C of 23–1044 provides that:

> "In cases not enumerated in Subsection B of this section, where the injury causes permanent partial disability for work the employee shall receive during such disability compensation equal to fifty-five per cent of the difference between his average monthly wages before the accident and the amount which represents his reduced monthly earning capacity resulting from the disability, but the payment shall not continue after the disability ends * * *."

Subsection D provides that:

> "[C]onsideration shall be given, among other things, to any previous disability * * * the nature and extent of the physical disability * * *."

Whenever an injured workman has a previous disability or at the time of injury suffers what would be two scheduled injuries at the same time, our Supreme Court has held that the Commission must treat the combined disabilities as unscheduled in nature:

> "We specifically hold that compensation for multiple injuries such as suffered by petitioner here may not be determined by applying the schedules provided for in section 56–957(b) and combining the two scheduled losses. In such a case, no equitable award by way of compensation can be made

without taking into consideration (a) the general functional disability and (b) loss of earning capacity upon the basis of the factors set forth in subsections (c) and (d) of section 56–957, which are exclusive. Petitioner was not entitled to be compensated upon the theory that he had suffered compensable scheduled injuries and, in addition thereto, entitled to compensation for his loss of earning capacity. Petitioner was entitled only to a loss of earnings award to be arrived at as indicated above, which was the formula used in the making of the award under review." Williams v. Industrial Commission of Arizona, 73 Ariz. 57, at 60, 61, 237 P.2d 471, at 474 (1951).

And:

"This Court has on many occasions interpreted A.R.S. § 23–1044, subds. C, D, and E, supra. (Citations omitted) All of these cases bear out the Commission's position, i. e., they require the Commission to take into consideration a previous disability as it exists at the time of a subsequent injury, and if any disability results from the subsequent injury, whether scheduled or unscheduled, or both, the Commission must treat the disabilities as general or unscheduled in nature, and base its award on loss of earning capacity only, as derived from the facts of the case." Woods v. Industrial Commission, 91 Ariz. 14, at 16, 368 P.2d 758, at 759 (1962).

It is the contention of the Commission that hernias being classified under 23–1043 A.R.S., that they are in a distinct and separate category, and that in the instant case the petitioner may not take the disability resulting from the hernia together with the scheduled permanent partial disability to the shoulder and arm and convert the sum total of the disabilities into the unscheduled category.

It is true, as respondent contends, that hernia cases are treated differently than most industrial injuries. The reasons lie in the nature of the hernia injury. In many cases, the hernia is congenital in background and develops over a period of many years. Commissions and courts have been unable to determine which employer should be responsible for the specific injury. As has been stated:

"The real purpose and the precautions laid down by the Legislature in the section here involved, is to protect the employer from claims for hernia not actually caused by the accident." Minardi v. Pacific Airmotive Corp., 43 N.J.Super. 460, 129 A.2d 51, at 56 (1957).

And:

"The difficulties in finding the truth in such a situation gave rise to the enactment of Chapter 90, Acts of 1941. It was the purpose and object of this legislation to remove the issue as far as possible from the field of conjecture and speculation." Wood v. Edenfield Electric Company, 211 Tenn. 295, 364 S.W.2d 908, 909 (1963).

The Arizona Supreme Court discussed the hernia statute in an earlier case concerning a workman who sustained a hernia and died as a result of the operation to repair said hernia. It was the contention of the Commission in that case that a hernia under the statute was compensable only as set forth in that section, and that no death benefit compensations might be paid thereunder. The Arizona Supreme Court stated:

"* * * [W]e think it is plain that there are two independent and separate rights of recovery, although based on the same accident; the one of the workman during his lifetime, and the other of his dependents after his death. * * *

"We hold therefore, that when an injured workman dies as a result of a hernia of the class described in subdiv. (b) of section 1439, supra, the two-month limitation placed by the section on compensation due him in-

dividually for the hernia does not include the compensation due his dependents as a death benefit under the general provisions of section 1438, supra, and that they are entitled to the same benefits as are given by the act for death resulting from any other cause covered by law. The award is set aside." Kay v. Hillside Mines, 54 Ariz. 36, at 43, 44, 91 P.2d 867, 870 (1939).

The Arizona Supreme Court also stated in a later case:

"The Arizona Legislature, along with some 32 other state legislatures, has seen fit to enact specific provisions regarding hernia as a compensable injury in its Workmen's Compensation Law, and to treat such injuries separate and apart from the general rules of rating disabilities due to injuries sustained in the course of a workman's employment. Schneider's Workmen's Compensation, Third or Permanent Edition, section 1470, page 573. It is to our statutory law alone that we must look for guidance. By reference to the code provision, 56–959, (b), supra, it is readily apparent that there is no provision whatsoever for payment of compensation for non-traumatic recurrent hernia. The section by its terms provides for compensation for not to exceed two months only in cases of original injury. Under no fair interpretation of this statute can it be held that the legislature has made any provision for aiding workmen suffering from recurrent hernia. It is not within our province to concern ourselves with the wisdom of the legislation at hand. * * * It may well be that more liberal treatment should be accorded the small percentage of hernia victims who suffer from true recurring hernia, but the injustice, if any, is for the legislative department and not for the courts to correct. We are not at liberty to extend by interpretation the meaning implicit in the language of a statute defining the circumstances under which hernia is compensable, in order to provide a more liberal rule of compensation than that which the legislature saw fit to adopt." Williams v. Industrial Commission, 68 Ariz. 147, 150, 151, 152, 202 P.2d 898, 901 (1949).

We do not believe that the Williams v. Industrial Commission case, supra, or the hernia statute standing alone as it does, prevents a petitioner who has sustained an injury to the arm and who is suffering an additional disability as a result of an inoperable hernia, from taking advantage of the unscheduled section of 23–1044 A.R.S. Although there is respectable authority to the contrary, some recent cases uphold this view. In a recent Florida case:

"The principal point for determination as agreed by both parties is as follows: Where a claimant suffers a hernia as a direct result of an industrial accident in the course of his employment and undergoes four unsuccessful surgical operations for the hernias and, in addition, surgery for the removal of a testicle, should he be awarded disability under § 440.15(6), Florida Statutes, F.S.A. (hernia section), or 440.15(3) (u), Florida Statutes, F.S.A. (loss of wage-earning capacity section)? * * * We have examined Padrick Chevrolet Company v. Crosby, Fla.1954, 75 So.2d 762, 763 (other citations omitted) relied on by claimant, and while they have to do with what might be called kindred aspect, not in point with the case at bar, they do not militate against being persuasive of the claimant's contention. In the Crosby case, supra, we said that 'it should be noted that section 440.15(6), supra, does not, in terms, preclude a person who suffers from a herniated condition from recovering compensation when that condition is aggravated by a subsequent accident. '

All that the statute does is prevent an employee with a pre-existing hernia from claiming, in event of accident, full compensation as for a "hernia resulting from injury by an accident," and leaves such employee to his remedy under section 440.02(19), Florida Statutes 1951, F.S.A.'" Sherman v. Peoples Water and Gas Company, Fla., 138 So.2d 745, at 746, 748 (1962).

The Florida court went on to reinstate an order of the Deputy Commissioner placing the petitioner's disability in the unscheduled category.

It has been stated:

"In many cases in which there is sufficient evidence to prove that the hernia or an operation therefore resulted in permanent and total disability, compensation has been awarded for such disability even though the Act provides a limited amount of compensation for the hernia itself." Schneider, Workmen's Compensation, Third or Permanent Edition, Vol. 5, page 585, Section 1477 A.

And:

"Considering the entire evidence and the surrounding circumstances we cannot agree that claimant's right to compensation is limited by the hernia clause of the statute. All of the injuries above mentioned operated together to produce the disability found to exist by the Commission. The amount of compensation recoverable is therefore governed by the 'other cases' provision of section 22 of the statute, supra, and not by the hernia clause. Transwestern Oil Co. v. Partain, 188 Okl. 97, 106 P.2d 263." Steelman v. Justice, 204 Okl. 117, 227 P.2d 647, 649 (1951).

In the instant case, we hold that an injured workman suffering a disability

from a hernia made inoperable due to a previous cardiac condition when coupled with a scheduled injury to the arm, must be treated as having an unscheduled disability within the meaning of Section 23-1044, subsecs. C, D, and E, A.R.S.

The award is set aside.

STEVENS, C. J., and DONOFRIO, J., concurring.