612 P.2d 507

**SUPERLITE BUILDERS and Insurance Company of North America, Petitioners,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Charles Chapman, Respondent Employee.**

No. 1 CA–IC 2214.

Court of Appeals of Arizona, Division 1, Department C.

May 29, 1980.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P. A. by J. Victor Stoffa, Phoenix, for petitioners.

Calvin Harris, Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Gorey & Delaney by Edgar M. Delaney, Phoenix, for respondent employee.

## OPINION

HAIRE, Judge.

The essential question raised in this review is whether permanent physical impairment resulting solely from nontraumatic recurrent hernias will support an unscheduled award.

Respondent employee Charles Chapman has a history of recurrent hernias going back as far as 1957. The medical and procedural history of the current claim is a complex one. The record indicates that respondent was injured on June 15, 1974 while working as a dock worker for petitioner employer, Superlite Builders. The injury was diagnosed as a bilateral inguinal hernia. On September 23, 1974 surgery was performed to correct the right hernia. In the course of that surgery, in order to obtain a better result in terms of strength of the fascia, the right testicle was removed. Additional surgery was undertaken on October 14, 1974 to repair the left hernia. Complications of that surgery required drainage of the incision on October 22, 1974. Further complications resulted in the left testicle becoming atrophied, requiring its removal by surgery on October 31, 1974.

Respondent employee's initial claim for benefits was accepted by petitioner carrier Insurance Company of North America by its notice of claim status on September 10, 1974. On November 15, 1974 the carrier issued a notice of claim status terminating benefits on the basis that the maximum had been paid under A.R.S. § 23–1043(2).[1] Respondent requested a hearing alleging that he had had further complications due to the hernia including infection of the surgical area, complaints of nervousness and other difficulties including leg pain, skin rash, back pain, and psychiatric disorder. A hearing was held on January 27, 1975. It resulted in an award dated February 11, 1975, continuing temporary benefits. That award became final.

Later in 1975, the claimant suffered a recurrence of both right and left hernias. They were repaired with marlex mesh by surgery on October 10, 1975 for the right hernia and November 14, 1975 for the left

---

1. A.R.S. § 23–1043 provides:

§ 23–1043. Hernias classified for compensation purposes

"All hernias are considered injuries within the provisions of this chapter causing incapacitating conditions or permanent disability, and until otherwise ordered by the commission, the following rules for rating hernias shall govern:

"1. *Real traumatic hernia is an injury to the* abdominal wall of sufficient severity to puncture or tear asunder the wall, and permit the exposure or protrusion of the abdominal viscera or some part thereof. Such injury will be compensated as a temporary total disability and as a partial permanent disability, depending upon the lessening of the injured individual's earning capacity.

"2. All other hernias, whenever occurring or discovered and whatsoever the cause, except as under paragraph 1 of this section, are considered diseases causing incapacitating conditions or permanent partial disability, but the permanent partial disability and the causes thereof are considered to be as shown by medical facts to have either existed from birth, to have been years in formation, or both, and are not compensatory, unless it is proved:

(a) That the immediate cause, which calls attention to the presence of the hernia, was a sudden effort or severe strain or blow received while in the course of employment.

(b) That the descent of the hernia occurred immediately following the cause.

(c) That the cause was accompanied or immediately followed by severe pain in the hernial region.

(d) That the facts in subdivisions (a), (b) and (c) of this paragraph were of such severity that they were noticed by the claimant and communicated immediately to one or more persons.

"If the facts in subdivisions (a), (b), (c) and (d) of this paragraph are proven, *the hernias* are considered to be aggravations of previous ailments or diseases, *and will be compensated as such for time lost only to a limited extent, depending upon the nature of the proof submitted and the result of the local medical examination, but for not to exceed two months.*" (Emphasis added).

hernia. By January of 1976, respondent's treating physician, Jerry Wetherell, M.D., felt that successful repair of the hernia had been accomplished and released the respondent for regular work. The carrier's notice of claim status was issued on September 27, 1977, terminating temporary benefits and finding no permanent disability, based on the physician's January report. Respondent requested a hearing and one was held on January 24, 1978. At that time, apparently based on a new opinion from Dr. Wetherell, the carrier rescinded its September 27, 1977 notice of claim status and replaced it with a notice of claim status continuing benefits but containing the following proviso:

"Applicant is entitled to medical benefits from and after 9/27/77. Applicant is entitled to total temporary disability benefits from 9/27/77 through and including 11/27/77.

"Applicant has sustained an additional hernia which may be the result of his industrial injury herein. Without, at this time, conceding liability for such hernia as may have been found by Dr. Jerry Wetherell, M.D., the carrier agrees as follows:

"First, carrier agrees to restore the applicant to full temporary total disability status and to pay compensation appropriate to such status as of the date of the applicant's admission to any hospital for repair of the hernia by Dr. Jerry Wetherell. "Second, the carrier agrees to continue total temporary disability compensation following such hospitalization until the condition is stationary or until medical information indicates that the applicant is able to return to some form of work. "Third, applicant is entitled to medical benefits, but no temporary disability compensation shall be payable following 11/27/77 until the date of applicant's admission to hospital for the surgical repair of hernia above-mentioned."

In February of 1978, respondent once again suffered a recurrence of a hernia, which was once again repaired. Then, on June 8, 1978, the carrier issued the notice of claim status out of which the instant litigation arose. That notice terminated temporary benefits and found no permanent disability. Respondent filed a request for hearing and formal hearings were held before the Industrial Commission on October 27, 1978 and January 4, 1979. The hearing officer's award, entered January 19, 1979, found that the respondent had sustained a 20% permanent physical impairment due to the bilateral inguinal hernias and stated that the case would abide further processing for determination of loss of earning capacity. The carrier sought review of the award on the administrative level. When the award was affirmed, the petitioners sought review in this Court.

On review, petitioners argue that, where the hearing officer found that the claimant's permanent physical impairment was due solely to his recurrent nontraumatic hernias, and no disability attributable to the removal of the claimant's testicles or any other alleged complications, it was error to treat the injury as unscheduled and to leave open for a further determination the question of claimant's loss of earning capacity.

■ The claimant's first response is that by virtue of the February 11, 1975 award,[2] which has become final, it is *res judicata* that the injury in question must be treated as an unscheduled injury, and thus it is not subject to the limitations of A.R.S. § 23–1043(2). We first note that this affirmative defense was not raised by the employee until after the hearing officer entered his award, and thus was untimely. *Cotton v. Industrial Commission*, 26 Ariz.App. 58, 546 P.2d 35 (1976). Additionally, the defense fails on the merits. The February 11, 1975 award concerned the claimant's entitlement

2. The February 11, 1975 award was entered during the temporary disability stage of this proceeding, and contained the following provision:

No. 4: "The complications which arose in connection with applicant's injury have the effect of removing his claim from the provisions of A.R.S. Sec. 23–1043, with the result that applicant is not limited to the two months lost time compensation provided by subsection 2 of this statutory section."

to additional temporary benefits due to complications which arose from the hernias and from the repair thereof prior to the time his condition became stationary. That award cannot be said to have determined with finality the effect, if any, of his temporary condition upon any future permanent impairment or disability status once that condition and the underlying injury became stationary. In our opinion the finality afforded that temporary award would not foreclose the carrier from showing at a subsequent time that the claimant's permanent physical impairment was entirely the result of the recurrent nontraumatic hernias and therefore was compensable solely under the provisions of A.R.S. § 23–1043(2), and not under the scheduled or unscheduled provisions of A.R.S. § 23–1044 B and C.

The employee's second argument in response to the issue raised by petitioners is that the hearing officer's award of January 19, 1979, attributed part of petitioner's permanent physical impairment to the removal of the testicles (bilateral orchiectomy) thereby requiring that the claimant's injury be treated as an unscheduled industrial injury pursuant to A.R.S. § 23–1044 C rather than as an injury governed by the provisions applicable to nontraumatic hernias under A.R.S. § 23–1043(2). We do not agree that the January 19th award can be so construed. Finding no. 8 of the award states:

> "8. When all of the medical and other evidence is considered in its entirety, it reasonably supports these conclusions:
>
> "(1) Applicant has not established, by a reasonable preponderance of the evidence, that he should be awarded or is entitled to permanent disability status by virtue of his bilateral orchiectomy, skin rash, tension and nervousness, or any effect of his industrial injury upon his pulmonary condition; (2) That in relation to the bilateral hernia condition resulting from the June 15, 1974 industrial episode,

applicant is afflicted with a 20% general physical functional impairment."

■ In our opinion the only reasonable interpretation of the hearing officer's findings is that the hearing officer's entry of an unscheduled award was based entirely upon the residual impairment resulting solely from the hernias and not from any physical impairment which the evidence might have shown to have resulted from the bilateral orchiectomy or other complications.

Although simultaneous or recurrent nontraumatic hernias may in fact result in a permanent disability for work, the Arizona legislature has provided that compensation for such disability is subject to the limitations of A.R.S. § 23–1043(2). *Williams v. Industrial Commission*, 68 Ariz. 147, 202 P.2d 898 (1949); *Linville v. Industrial Commission*, 12 Ariz.App. 508, 472 P.2d 477 (1970).[3] Respondent employee has not argued that the weakened fascia that is causing his earning capacity disability is due to the effects of the surgery to repair the hernias. *See Boggs v. Industrial Commission*, 10 Ariz.App. 18, 455 P.2d 467 (1969). Further, we note that the evidence shows that it is the respondent's inherent susceptibility to recurrent hernia and not the effects of surgery that is causing his current disability.

■ Since the award must be set aside and the matter remanded for further proceedings, we point out that the question of the employee's earning capacity disability was not properly before the hearing officer at the subject hearings. The only pertinent issues were those relating to the determination of any permanent physical impairment which the claimant might have incurred, caused by the industrial injury. There is no question but that the bilateral orchiectomy was caused by the industrial injury and resulted in physical impairment. Since the bilateral orchiectomy physical impairment does not fall within the confines of the

---

**3.** Respondent employee has never argued that his hernias should be viewed as real traumatic hernias subject to the provisions of A.R.S. § 23–1043(1). Rather, it has been his contention throughout that due to the complications of surgery and arguably related conditions, that he was entitled to have the injury treated as an unscheduled one.

hernia statute, A.R.S. § 23–1043(2), it would be appropriately considered under the provisions of A.R.S. § 23–1044 C as an unscheduled impairment. In that regard, the evidence before the hearing officer would clearly have supported the entry of an unscheduled impairment award, and the employee would be entitled to any loss of earning capacity which he could subsequently demonstrate to have resulted from that specific impairment (the loss of the testicles). *Cf. Imrich v. Industrial Commission*, 13 Ariz.App. 155, 474 P.2d 874 (1970); *Heidler v. Industrial Commission*, 14 Ariz. App. 280, 482 P.2d 889 (1971). However, as we have previously indicated, any loss of earning capacity resulting from the residual impairment incidental to the recurrent non-traumatic hernias should not be considered, since the compensation for such impairment and disability is completely governed by the limitations imposed by A.R.S. § 23–1043(2).

The award is set aside.

JACOBSON, P. J., and CONTRERAS, J., concur.