767 P.2d 1193

Ray HANLEY, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Allen & Kim Saffrahn, Respondent Employer,

No Insurance, Respondent Carrier.

Ray HANLEY, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Western States Tire & Auto, Respondent Employer,

Travelers Insurance Company, Respondent Carrier.

No. 1 CA–IC 88–003.

Court of Appeals of Arizona, Division 1, Department C.

Jan. 17, 1989.

Jerome, Gibson & Stewart, P.C. by James L. Stevenson, Phoenix, for petitioner.

Catherine A. Fuller, Chief Counsel, The Indus. Com'n of Arizona, Phoenix, for respondent.

Law Offices of Harlan Crossman, P.C. by Harlan Crossman, Phoenix, for respondent Employer Saffrahns.

Anita R. Valainis, The Indus. Com'n of Arizona, No Ins. Section, Phoenix, for respondent carrier.

Law Office of JoAnn Gaffaney, P.C. by JoAnn Gaffaney, Phoenix, for respondent Carrier Travelers Ins.

## OPINION

BROOKS, Presiding Judge.

This is a special action review of a consolidated Industrial Commission award that, among other things, classified as non-traumatic a hernia sustained by petitioner employee (claimant) in June 1986 and, accordingly, limited disability benefits to two months. *See generally* A.R.S. § 23–1043.[1] Two issues are presented for review:

---

1. The full text of this statute provides:

§ 23–1043. Hernias classified for compensation purposes

All hernias are considered injuries within the provisions of this chapter causing incapacitating conditions or permanent disability, and until otherwise ordered by the commission, the following rules for rating hernias shall govern:

1. Real traumatic hernia is an injury to the abdominal wall of sufficient severity to puncture or tear asunder the wall, and permit the exposure or protrusion of the abdominal viscera or some part thereof. Such injury will be compensated as a temporary total disability and as a partial permanent disability, depending upon the lessening of the injured individual's earning capacity.

2. All other hernias, whenever occurring or discovered and whatsoever the cause, except as under paragraph 1 of this section, are considered diseases causing incapacitating conditions or permanent partial disability, but the permanent partial disability and the causes thereof are considered to be as shown by medical facts to have either existed from birth, to

have been years in formation, or both, and are not compensatory, unless it is proved:

(a) That the immediate cause, which calls attention to the presence of the hernia, was a sudden effort or severe strain or blow received while in the course of employment.

(b) That the descent of the hernia occurred immediately following the cause.

(c) That the cause was accompanied or immediately followed by severe pain in the hernial region.

(d) That the facts in subdivisions (a), (b) and (c) of this paragraph were of such severity that they were noticed by the claimant and communicated immediately to one or more persons.

If the facts in subdivisions (a), (b), (c) and (d) of this paragraph are proven, the hernias are considered to be aggravations of previous ailments or diseases, and will be compensated as such for time lost only to a limited extent, depending upon the nature of the proof submitted and the result of the local medical examination, *but for not to exceed two months.* Hernias of every kind shall be compensated pursuant to this paragraph unless the claimant proves

(1) whether the administrative law judge correctly classified claimant's hernia; and, if so,

(2) whether the two-month limitation on disability benefits applies to complications of a nontraumatic hernia.

We conclude that although the post-surgical complications of claimant's nontraumatic hernia neither "unscheduled" the injury nor converted it into a real traumatic hernia, any disability attributable to those complications is compensable without regard to the two-month limitation on benefits. We therefore set aside the award.

## FACTS AND PROCEDURE

In September 1985, while working for respondent employer Western States Tire & Auto (Western), claimant sustained a right inguinal hernia. Dr. Dennis Weiland repaired the hernia in December 1985. In February 1986, after a recurrence in the area of the repair, Dr. Weiland again performed surgery. He eventually released claimant to regular work as of May 1, 1986.

Claimant returned to work, this time for the uninsured respondent employer, Saffrahn. Approximately five weeks later, in June 1986, while straining to loosen a frozen bolt, claimant felt a sudden onset of sharp groin pain in an area about four inches higher and to the right of the previous hernia. He reported the accident to Saffrahn and then returned to Dr. Weiland, who observed a diffuse protrusion in the right groin area. Dr. Weiland performed a third surgery in late June 1986.

Claimant filed a compensation claim for the June 1986 hernia. After an administrative assessment of compensability, Saffrahn requested a hearing. Meanwhile, Western's compensation carrier (Travelers) issued notices terminating benefits for the September 1985 hernia and denying liability for the June 1986 hernia. The claimant protested the termination notice but did not protest the notice denying liability. The two hearing requests were then consolidated.

to the satisfaction of the commission by a preponderance of the evidence that the hernia is a real traumatic hernia as defined in paragraph 1.

At the first scheduled hearing, claimant and Dr. Weiland appeared. Claimant testified that he was asymptomatic when he was released to work in May 1986. After the June 1986 accident, however, he developed new symptoms "over against this area by the old incision." In addition, following the third surgery, he developed disabling pain radiating from his groin to his abdomen. Because of these latter symptoms, he consulted general surgeon Dr. William Marsh and a psychologist.

Dr. Weiland testified that the June 1986 surgery revealed a diffuse breakdown in the area of the previous surgeries, but no actual hole or extrusion of tissue. He described claimant's condition as a "recurring hernia," which he defined as a hernia occurring in the same area that had been repaired previously. Dr. Weiland causally related this condition to the June 1986 strain injury. He denied that the previous surgeries had predisposed the claimant to subsequent injury.

Dr. Weiland further testified that he had last seen claimant in August 1986. Recovery was then proceeding normally, and he expected to release claimant to work the following month. Claimant, however, did not return to Dr. Weiland, seeking treatment instead from Dr. Marsh.

Dr. Marsh testified at the second scheduled hearing. He stated that he had first examined claimant in September 1986, when he diagnosed a causalgia, or sympathetic dystrophy, in claimant's lower right abdomen. He attributed claimant's pain to entrapment of the ilioinguinal nerve and characterized the condition as a complication of the healing process after claimant's latest hernia repair surgery.

According to Dr. Marsh, by May 1987, injection therapy had relieved approximately 80% of claimant's symptoms, enabling him to do light work. Dr. Marsh also reported that he had last seen claimant in June 1987, about a month before the hearing. At that time, claimant's complaints of

(Emphasis added.)

lower abdominal pain were different, and the doctor attributed them to an unrelated prostate infection.

In a post-hearing memorandum, claimant argued that the two-month limitation on disability benefits for a nontraumatic hernia was inapplicable because of the sympathetic dystrophy. The administrative law judge ignored this argument in his award. Instead, he found that there was an "obvious" medical conflict, which he neither identified nor resolved. He found that Dr. Marsh had testified that the sympathetic dystrophy was related to the June 1986 hernia. He concluded that the September 1985 hernia had become stationary on April 28, 1986, without permanent impairment. Finally, without expressly finding that the June 1986 hernia was nontraumatic, the administrative law judge concluded that claimant was entitled to medical benefits and up to two months of disability benefits. On administrative review, the claimant reiterated his argument regarding the sympathetic dystrophy, but the ensuing decision upon review again failed to address it. This special action followed.

On review, claimant's primary assertion again concerns the applicability of the two-month limitation on disability benefits. He also argues that the award should be set aside because it failed to address this assertion. We address this latter argument first.

## ADEQUACY OF THE AWARD

■ An award is adequate if it includes ultimate findings disposing of the material issues. *See Cavco Industries v. Industrial Commission,* 129 Ariz. 429, 631 P.2d 1087 (1981). Furthermore, necessary intermediate findings are implicit in the ultimate conclusion. *See Pearce Development v. Industrial Commission,* 147 Ariz. 582, 712 P.2d 429 (1985).

The current award satisfies this standard because it includes the ultimate conclusion that the two-month limitation on disability benefits applies to the June 1986 hernia. To have reached this conclusion, the administrative law judge must have found the June 1986 hernia to be nontraumatic and,

further, must have rejected the claimant's arguments concerning the sympathetic dystrophy. Under *Cavco* and *Pearce,* the administrative law judge was not required to state the reasons for this rejection.

## LIMITATION ON
## DISABILITY BENEFITS

We turn now to claimant's primary assertion. He presents three arguments to support it. First, he argues that the medical evidence satisfied the statutory standard for a real traumatic hernia. Second, he argues that the evidence supports a finding that he suffered at least a compensable nontraumatic hernia, which, because of the sympathetic dystrophy, should be compensable as a traumatic hernia. Third, he argues that his disability should be compensable notwithstanding the provisions of A.R.S. § 23–1043 either because the sympathetic dystrophy is independently compensable or because it "unscheduled" the nontraumatic hernia.

Only the last argument requires more than summary treatment. Regarding the first, the medical evidence directly contradicts claimant's position. The statute requires "an injury to the abdominal wall of sufficient severity to puncture or tear asunder the wall, and permit the exposure or protrusion of the abdominal viscera." Dr. Weiland testified that the June 1986 surgery revealed no specific hole or tear and no protrusion of tissue. He characterized claimant's injury instead as a stretching, or "diffuse bulge," of the tissues in the area of the previous repair.

■ Regarding claimant's second argument, no one disputes either that claimant suffered a compensable, nontraumatic hernia in June 1986, or that the sympathetic dystrophy was a complication of that injury. Claimant cites no authority, however, to support his argument that when a nontraumatic hernia is accompanied by complications, it is thereby converted into a real traumatic one.

Moreover, the argument is logically implausible. The vital distinction between a real traumatic hernia and a nontraumatic

hernia is that abnormal weakness of the abdominal wall is considered to be a contributing cause of latter, but not of the former. *Figueroa v. Industrial Commission,* 112 Ariz. 473, 476, 543 P.2d 785, 788 (1975). A complication that arises after the injury cannot affect this distinction.

### Compensability vs. Determination of Benefits

Before addressing the merits of claimant's third argument, we consider Travelers' contention that the argument is premature because the current award concerns compensability, not permanent disability benefits. In the ordinary compensation claim, assessment of compensability is severable from a determination of disability benefits, and the claim for permanent benefits matures only after the industrial injury becomes stationary. *See generally, e.g., Home Insurance Company v. Industrial Commission,* 23 Ariz.App. 90, 530 P.2d 1123 (1975).

In the case of a nontraumatic hernia, however, the assessment of compensability is not severable from the determination of benefits because of the two-month limitation. Arguably, a final determination that this limitation applies despite a disabling complication during the temporary stage would preclude additional benefits if the complication later proved to be permanently disabling.[2] We therefore conclude that consideration of claimant's third argument is not premature.

### Complications of a Nontraumatic Hernia

■ To support his position, claimant relies on two cases, *Superlite Builders v. Industrial Commission,* 126 Ariz. 51, 612 P.2d 507 (App.1980), and *Corrier v. Industrial Commission,* 3 Ariz.App. 39, 411 P.2d 462 (1966). He contends that *Superlite* indicates that the two-month limitation is inapplicable to any disability due solely to his sympathetic dystrophy. We agree. He cites *Corrier* in support of his argument

that the sympathetic dystrophy should "unschedule" his entire injury. We find that case to be inapplicable.

The claimant in *Superlite* had suffered bilateral inguinal hernias. Surgical repair included the removal of one testicle. Subsequent complications required removal of the other testicle. Further complications arose, including infection of the surgical area, leg and back pain, a rash, and emotional difficulties. The carrier attempted to terminate temporary benefits after two months, but after a hearing, the claimant was awarded continuing temporary benefits.

When the claimant's condition became stationary, the carrier terminated temporary benefits without permanent disability. The claimant protested, and the hearing officer entered an unscheduled award based entirely upon residual impairment resulting from the hernias and not from the complications. On review, this court set aside the award because the two-month disability limitation applied. *Superlite,* 126 Ariz. at 54, 612 P.2d at 510. We also noted, however, that the liability limitation does not apply to physical impairment that results from complications of a nontraumatic hernia:

Since the award must be set aside and the matter remanded for further proceedings, we point out that the question of the employee's earning capacity disability was not properly before the hearing officer at the subject hearings. The only pertinent issues were those relating to the determination of any permanent physical impairment which the claimant might have incurred, caused by the industrial injury. There is no question but that the bilateral orchiectomy was caused by the industrial injury and resulted in physical impairment. Since the bilateral orchiectomy physical impairment does not fall within the confines of the hernia statute, A.R.S. § 23–1043(2), it would be appropriately considered under the provisions of A.R.S. § 23–1044 C as

---

**2.** The converse is not true because the complication may resolve without permanent disability. *See Superlite Builders v. Industrial Commission,*

126 Ariz. 51, 53–54, 612 P.2d 507, 509–10 (App. 1980).

an unscheduled impairment. In that regard, the evidence before the hearing officer would clearly have supported the entry of an unscheduled impairment award, and the employee would be entitled to any loss of earning capacity which he could subsequently demonstrate to have resulted from that specific impairment (the loss of the testicles). *Cf. Imrich v. Industrial Commission,* 13 Ariz. App. 155, 474 P.2d 874 (1970); *Heidler v. Industrial Commission,* 14 Ariz.App. 280, 482 P.2d 889 (1971). *However, as we have previously indicated, any loss of earning capacity resulting from the residual impairment incidental to the recurrent nontraumatic hernias should not be considered, since the compensation for such impairment and disability is completely governed by the limitations imposed by A.R.S. § 23-1043(2).*

126 Ariz. at 54–55, 612 P.2d at 510–11 (emphasis added).

Claimant asserts that because his disability, like that suffered by the claimant in *Superlite,* is due solely to a complication, and not to the hernia itself, it should be compensable without regard to the restrictions imposed by A.R.S. § 23–1043(2). In response, Saffrahn attempts to distinguish *Superlite* by suggesting that whereas the testicles are in a part of the body that is different from the hernia, claimant's disabling complication is nothing more than pain in the area of the hernia itself.

The medical evidence fails to support this distinction. Dr. Marsh testified that entrapment of the ilioinguinal nerve caused the sympathetic dystrophy.[3] He explained that the distribution of claimant's pain corresponded to an area served by that nerve, a branch of which also goes to the area of the hernia. It is apparent that the sympathetic dystrophy was distinct from the diffuse breakdown of tissue that constituted the June 1986 herniation. We also note that pain of this type is rateable under the A.M.A. Guides. *See Guides to the Evalua-*

*tion of Permanent Impairment* (2nd ed. 1984) at 73.

Furthermore, we do not believe that an award of benefits for a disabling complication of a nontraumatic hernia would be inconsistent with the holdings in *Williams v. Industrial Commission,* 68 Ariz. 147, 202 P.2d 898 (1949), or *Linville v. Industrial Commission,* 12 Ariz.App. 508, 472 P.2d 477 (1970). In *Williams,* our supreme court stated, "under our Workmen's Compensation Law the subject of hernia and compensation therefor is treated sui generis, the provisions of the remaining sections of the Compensation Law not being directly applicable." 68 Ariz. at 150, 202 P.2d at 900. Unlike ordinary scheduled injuries, even multiple and recurrent nontraumatic hernias are governed by the hernia statute. *Compare Williams and Linville with, e.g., Ossic v. Verde Central Mines,* 46 Ariz. 176, 49 P.2d 396 (1935), *and Rodgers v. Industrial Commission,* 109 Ariz. 216, 508 P.2d 46 (1973).

In contrast to the instant case, *Williams* and *Linville* concerned compensation for disabilities due solely to the claimants' nontraumatic hernias. If the legislature's objective in imposing a special statutory limitation on benefits is to be fulfilled, it must apply in such cases. Exemptions for multiple nontraumatic hernias, whether simultaneous or recurrent, would defeat the purpose of the statute.

On the other hand, we do not believe that either the cases or the statute itself require that the two-month limitation be extended to a disability due solely to complications of a nontraumatic hernia. The Workers' Compensation Act is remedial. Benefits should be awarded unless specifically excluded. *See Marriott Corporation v. Industrial Commission,* 147 Ariz. 116, 708 P.2d 1307 (1985). We therefore conclude that the administrative law judge erred in limiting the disability benefits payable for claimant's sympathetic dystrophy.

---

**3.** Dr. Weiland expressed no opinion about the diagnosis of sympathetic dystrophy and was not questioned about Dr. Marsh's diagnosis or treatment of this condition. Saffrahn does not sug-

gest that Dr. Weiland's opinion conflicted with Dr. Marsh's, and the record contains no evidence to support a finding that their opinions conflicted.

More troublesome, however, is claimant's suggestion that under *Corrier*, a disabling complication of a nontraumatic hernia should "unschedule" the entire injury, rendering the two-month limitation inapplicable even to any disability that might be attributed to the hernia itself. Even if we were to accept this interpretation of *Corrier*, however, the facts now before us would not support its application in the instant case.

In *Corrier*, the claimant suffered a nontraumatic hernia and a shoulder injury in the same industrial accident. The hernia was inoperable because of an unrelated heart condition, and the shoulder injury resulted in a permanent impairment. He was awarded a scheduled disability for the shoulder injury and nothing for the hernia. On review, this court held that the disability from the claimant's inoperable hernia, coupled with his scheduled shoulder injury, entitled him to benefits for an *unscheduled* disability. 3 Ariz.App. at 44, 411 P.2d at 467.

In the instant case, claimant has acknowledged that his disability for work is attributable solely to the sympathetic dystrophy, with none due to the hernia itself. No question regarding a "combined disability" is presented. *See Id.* at 41–42, 411 P.2d at 464–65. For that reason, the rule set forth in *Corrier* is inapplicable.

Moreover, even if claimant's disability were attributable in part to residual impairment from the 1986 hernia, we would decline to extend the holding in *Corrier* to a case in which the injury to be "unscheduled" is the hernia itself. To do so would be at odds with the holdings in *Williams, Linville,* and *Superlite.*

## CONCLUSION

Travelers has requested that we affirm that part of the award terminating the September 1985 injury claim. In general, an award must be affirmed or set aside as a whole. *See* A.R.S. § 23–951(D). A narrow exception applies to consolidated awards that are completely severable. *See Professional Furniture Service v. Industrial Commission,* 133 Ariz. 206, 650 P.2d 508 (App.1982). In the instant case, separate awards were made for the injuries of September 1985 and June 1986. No argument challenging the award for the earlier injury has been presented to this court, and nothing in the record suggests that the claims should be reconsidered jointly.

Accordingly, the decision and award for the 1986 claim is set aside. The decision and award relating to the 1985 claim is affirmed.

CONTRERAS and KLEINSCHMIDT, JJ., concur.