[Civil No. 4833. Filed November 26, 1945.]

[163 Pac. (2d) 852.]

TOVREA PACKING COMPANY, a Corporation, Petitioner, v. ALEX TAPIA and THE INDUSTRIAL COMMISSION OF ARIZONA, Respondents.

Messrs. Ellinwood & Ross, Mr. George E. Wood, for Petitioner.

Mr. H. S. McCluskey, for Respondent Industrial Commission.

Mr. John R. Franks, of Counsel.

LaPRADE, J.—The Industrial Commission after a hearing as provided by law, Article 9, Chapter 56, Arizona Code Annotated 1939, made its award in favor of claimant, Alex Tapia and against Tovrea Packing Company, a corporation, his employer, and the latter, being dissatisfied therewith, has brought the matter here for review by writ of *certiorari*.

The facts in this case, briefly summarized, are as follows: The applicant, Alex Tapia, was employed by Tovrea Packing Company at its plant on East Van Buren Street, Phoenix, Arizona. On January 18, 1945, applicant sustained an injury by accident arising out of and in the course of his employment while grinding hamburger. The injury was to applicant's left thumb and resulted in the amputation of the tip or approximately one-fifth of the distal phalange, approximately one-third of the nail, and the cushion on the end of the thumb. The operation on the finger consisted of trimming off the bone and smoothing it down so that portions of the flesh could be pulled together and sutured to form a cushion at the end. Applicant returned to work on February 27, 1945, there being no loss of

function of the thumb. Thereafter, the Industrial Commission made its findings and award for a scheduled permanent disability, granting to applicant compensation for temporary disability and additional compensation for permanent partial disability, the latter being based upon a finding by the Commission that the injury caused a permanent partial disability, which is scheduled under Subsection (b) of Section 56–957, Arizona Code Annotated 1939. The employer filed its petition and application for rehearing on the ground that there was no evidence to support the finding of a scheduled permanent partial disability. The findings and award and decision upon rehearing affirmed the original findings and award.

Finding No. 4 on the rehearing reads as follows:

"That said injury also caused a permanent partial disability which is scheduled under the provisions of Paragraphs 1 and 6, Subsection (b), Section 56–957, Arizona Code, 1939, and said permanent partial disability is equal to 50% loss by amputation of the left thumb and entitles said applicant to compensation therefor in the sum of $93.16 for a period of (7½) seven and one-half months."

The respondent assigns this finding as error for the reason that said finding is not supported by, but is contrary to, the evidence in that according to the evidence applicant did not lose the distal phalange of his thumb. In support of this assignment of error, respondent offers the following proposition of law:

"The loss of less than substantially all of the distal, or second, phalange of the thumb does not constitute a scheduled permanent partial disability under the provisions of Paragraphs 1 and 6, Subsection (b), Section 56–957, Arizona Code Annotated, 1939."

The question for determination is based upon the construction to be placed on the provisions of Paragraphs 1 and 6, Subsection (b), Section 56–957, Arizona Code Annotated 1939, as applied to the injury sus-

tained by applicant. Those paragraphs were relied on and cited by the Commission in its findings as the basis for making the award for permanent partial disability. The pertinent portions of Section 56–957 are as follows:

"(b) Disability shall be deemed permanent partial disability if caused by any of the following specified injuries, and compensation of fifty-five (55) per cent of the average monthly wage of the injured employee, in addition to the compensation for temporary total disability, shall be paid for the period given in the following schedule:

"1. For the loss of a thumb, fifteen (15) months.

. . . . . . . . . . .

"6. The loss of a distal or second phalange of the thumb or the distal or third phalange of the first, second, third or fourth finger, shall be considered equal to the loss of one-half of such thumb or finger, and compensation shall be one-half of the amount specified for the loss of the entire thumb or finger."

The evidence in this case shows that only the tip or approximately one-fifth of the distal phalange of the left thumb of applicant was removed. It is the contention of the petitioner that the provisions of the statute above quoted do not authorize the finding made by the Commission that the amount of applicant's thumb which was cut off was equal to a fifty per cent loss by amputation.

The Commission in its findings and award interprets that statute to mean that the loss of any part of the distal phalange constitutes the loss of the whole.

An analysis of the statutes of other states discloses that the same or similar provisions are contained in those statutes, and have been construed by the courts of New York, Michigan, Maine, Kansas, and Pennsylvania. The construction placed on these statutes by these courts is not only helpful but we believe determinative of the position we should adopt.

Section 15 Workmen's Compensation Law, Consol. Laws, c. 67; Laws 1913, c. 816, provides that "the loss of the first phalange of the thumb or finger shall be considered to be equal to the loss of one-half of such thumb or finger . . . ."

In the case of *In re Petrie,* 215 N. Y 335, 109 N. E. 549, 550, the New York statute was construed for the first time. The Industrial Commission found that the claimant's injury resulted in "amputation of the third finger of the right hand near the first joint" and that "in the amputation of the third finger about one-third of the bone of the distal phalange was cut off" and on these findings an award was made for the loss of the entire phalange of the finger. On appeal the court held:

" . . . we think we should hold that the provisions of the statute providing compensation for the loss of a certain portion of the finger become operative and applicable when it appears that substantially all of the portion of the finger so designated has been lost, . . . ."

Since the Petrie case was decided, the courts of New York have followed the last-quoted portion of that case as being the rule of construction for their statute, and have consistently held that the provision for compensation for the loss of a certain phalange does not become operative unless it appears that substantially all of the phalange so designated has been lost. See *Ehman* v. *F. A. Koch & Co., Inc. et al.,* 209 App. Div. 777, 205 N. Y. Supp. 693; *Forbes* v. *Evening Mail et al.,* 194 App. Div. 563, 185 N. Y. Supp. 592; *Tetro* v. *Superior Printing & Box Co.,* 185 App. Div. 73, 172 N. Y. Supp. 722; *Ide* v. *Faul & Timmins,* 179 App. Div. 567, 166 N. Y. Supp. 858; *Thompson* v. *Sherwood Shoe Co.,* 178 App. Div. 319, 164 N. Y. Supp. 869; *Geiger* v. *Gotham Can Co.,* 177 App. Div. 29, 163 N. Y. Supp. 678; *Mockler* v. *Hawkes,* 173 App. Div. 333, 158 N. Y. Supp. 759.

Section 10, Part 2 of the Compensation Law of Michigan, Comp. Laws Mich. 1929, § 8426 provides:

" . . . the loss of the first (1st) phalange of the thumb, or of any finger, shall be considered to be equal to the loss of one-half (½) of such thumb, or finger, . . . ."

In the case of *Packer* v. *Olds Motor Works et al.*, 195 Mich. 497, 162 N. W. 80, 81, the employee sustained an injury which resulted in the amputation of about one-half of the distal phalange of the left thumb and an award was made for the loss of one-half of the thumb. On appeal the court held:

"The statute nowhere provides for the loss of a part of a phalange in its list of specified injuries and presumed disability arising therefrom. Except as to enumerated specific injuries, the compensation is to be proportionate to the extent of the impairment of the 'earning capacity in the employment in which he was working at the time of the accident.' Section 11, pt. 2, Compensation Law. It is obvious that the award by the board of compensation for 30 weeks, which is that allowed by the statute for the loss of an entire phalange, was based upon its determination that claimant had lost the entire use of said phalange. Under our decisions, this award is clearly erroneous."

See also *Fanning* v. *W. E. Wood Co. et al.*, 255 Mich. 618, 238 N. W. 627; *Van Eps* v. *Sligh Furniture Co. et al.*, 257 Mich. 112, 241 N. W. 182.

Section 44–510, Gen. St. 1935 of Kansas provides that "the loss of the first phalange of . . . any finger . . . " is to be considered equal to the loss of one-half of the finger or thumb and compensation paid accordingly. In the case of *Decicco* v. *John Morrell & Co.*, 152 Kan. 601, 106 Pac. (2d) 1053, 1054, the commission had ruled that as a matter of law where any portion of the bone of the distal phalange was amputated it constituted a loss of the entire distal phalange within the meaning of the above-noted section of the Work-

men's Compensation Act. The District Court to which an appeal was taken held that a proper construction of that section was:

" . . . the language 'the loss of the first phalange of . . . any finger' means a substantial loss of such phalange, and that a loss of $3/16''$ of the first phalange of the index finger, with the nail starting to return, is not a loss of the first phalange entitling the workman to compensation for loss of one-half of the entire finger. . . . "

The Supreme Court of Kansas, after discussing the evidence held:

" . . . We have examined all of the cases cited by both parties as well as others found in our own research. The interpretation placed upon the act by the district court is abundantly supported by the authorities. See 71 C. J. 840, 841, and particularly cases cited in footnotes 37 and 38; . . . ."

Section 306(c) of the Workmen's Compensation Act of Pennsylvania, as amended by the Act of 1939, 77 P. S. Pa. § 513, provides:

" . . . the loss of the first phalange of the thumb, or of any finger, shall be considered equivalent to the loss of one-half of such thumb or finger, . . . "

This section of the Act was under consideration in the case of *Vince* v. *Allegheny Pittsburgh Coal Co.*, 153 Pa. Super. 333, 33 Atl. (2d) 788, 791. This case is substantially on "all fours" with the instant case insofar as the statutory provisions and the evidence submitted to the commission are concerned. The findings were that approximately one-half of the distal phalange of the left thumb of the employee was amputated, instead of approximately one-fifth as in the instant case, and compensation was awarded for the loss of one-half of the thumb. After reviewing the statutory provisions of Pennsylvania and of New York and various decisions construing such provisions, the court held:

"A careful study of this record and the law applicable thereto convinces us that the evidence does not support the findings and conclusions of the board, . . . ."

The foregoing decisions holding that compensation is payable if substantially all of a distal phalange is lost constitute a liberal interpretation of the statute. Such holdings are based upon the proposition that where the loss is of substantially all of the distal phalange, the entire phalange is lost for all practical purposes. We approve of such construction regardless of the fact that it is "the loss of a distal or second phalange . . . " not of a part thereof which is made equivalent to the loss of one-half of the finger. Section 56–957(b) (6), *supra*. We hold that it is not necessary that every portion of the first phalange be lost to be compensable; yet we do hold that it is necessary to show that substantially all of the first phalange has been lost. We are content to believe that such a construction of the section is a liberal one, though not sanctioned by the literal wording of the law. To go further would do violence to the plain language of the statute. The statute is always subject to amendment by the legislature. In the exercise of a sound judicial discretion it is important that the law be not amended by judicial construction.

Counsel for respondents have cited us to several cases which they suggest are authority for the position taken by the Commission. The case of *H. K. Toy & Novelty Co.* v. *Richards,* 68 Ind. App. 653, 117 N. E. 260, is not in point for the reason that the wording of the Indiana statute is materially different from ours. This distinction is pointed out at length in the case of *Decicco* v. *John Morrell & Co.,* 152 Kan. 601, 106 Pac. (2d) 1053. The case of *Macon County Coal Co.* v. *Industrial Commission et al.,* 367 Ill. 458, 11 N. E. (2d) 924, 925, constitutes no authority for the reason that it is predicated

on a statute providing compensation for the *loss of use*. Additional cases cited by the respondents are: *Royal Canning Corporation et al.* v. *Industrial Commission et al.*, 101 Utah 323, 121 Pac. (2d) 406; *Brugioni* v. *Saylor Coal Co. et al.*, 198 Iowa 135, 197 N. W. 470; and *Starcevich* v. *Central Iowa Fuel Co.*, 208 Iowa 790, 226 N. W. 138. These cases have no application for the same reasons, as can readily be determined by an examination of the cases and statutes involved. No useful purpose can be served by an analysis of these cases bottomed on premises wholly dissimilar to that stated in our statute.

Under the evidence, the law, and the rule of liberal construction, the award should be set aside. It is so ordered.

ARTHUR T. LaPRADE, Judge.

STANFORD, C. J., and MORGAN, J., concur.