422 P.2d 178

**William A. MARTIN, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona and Virginia B. Miller, dba Knotty Pines Motel, Respondents.**

**No. 1 CA–IC 73.**

Court of Appeals of Arizona.

Jan. 10, 1967.

Donald J. Morgan, Phoenix, for petitioner.

Robert K. Park, Chief Counsel, by Arthur B. Parsons, Jr., Phoenix, for respondent Industrial Commission.

DONOFRIO, Judge.

This case is before the Court on a writ of certiorari obtained on application by the claimant, William A. Martin, to test the lawfulness of an award of the Industrial Commission of Arizona.

The Industrial Commission filed a motion to dismiss the appeal and quash the writ of certiorari for the reason that no employer-employee relationship existed between the insured and the claimant at the time of his injury, and therefore the Commission was and *is without jurisdiction in this matter.*

The Court by order denied the motion to dismiss, stating that the issues raised by it might more properly be considered at the time of consideration of the writ on its merits.

We will first consider the issues raised by the Commission's motion to dismiss. The facts necessary are as follows:

Claimant, at the time of his injury on August 11, 1963, was co-managing "The

Knotty Pines Motel" in Winslow, Arizona, with his wife. The motel property was owned by Virginia B. Miller. The parties had executed a document titled "Lease Agreement" on July 29, 1960, which set forth the rights and duties of the parties and established the financial terms between them.

The "Lease Agreement" of 1960 superseded a similar previous one which had been audited by the Commission as early as 1957. There were subsequent audits in 1959, 1961, 1962 and 1964. The Commission auditors made their examination of the business records and practices, and in each audit determined that the co-managers were employees and that their wages were subject to assessment of premiums in accordance with the Workmen's Compensation statutes. In 1958 the claimant wrote two letters to the Commission protesting the assessment of premiums and stating that he and his wife were self-employed. The letters were given a detailed answer by the manager of the Commission's auditing department, stating in part, "I am at a loss to understand your protest. * * *" His letter concludes with a demand for the premium due June 30, 1958. The claimant did not protest further, but paid the premiums as ordered. Each of the Commission audit reports contained this caveat:

"The classification or reclassification and determination of status of persons in the service of the insured and assessment of premium due and owing under this statement were determined by a proceeding before the Commission, pursuant to the terms of the statute, rules of the Commission, and the policy of insurance, and are intended to be, constitute, and are an 'order' of this Commission as defined by law, and are deemed and considered by this Commission to be prima facie, reasonable and lawful unless determined otherwise, and unless rehearing is applied for within twenty (20) days, within the provisions of Rules 1, 30 to 44 inclusive, and other applicable rules, of the Rules of Procedure before The Industrial Commission, and ARS §§ 23–930, 23–931, 23–944, 23–945, 23–946, 23–947 shall be deemed to be conclusive."

A.R.S. § 23–926 provides that:

"A. All books, records and payrolls of the employer showing or reflecting in any way the wage expenditure of the employer shall always be open for inspection by the commission or its assistants to ascertain information necessary for its administration of the law."

■ The auditors had the power to examine all the documents necessary to make their determination that the co-managers were employees within the meaning of the statutes. The Commission has seen fit to adopt the audit reports as orders of the Commission. These audit reports are appealable orders, and in the absence of a formal protest or appeal they become final, and the facts determined by them are res judicata.

■ The Commission, in its brief, reasons that Butler v. Industrial Commission, 57 Ariz. 119, 111 P.2d 628 (1941), is analogous to the present case. We cannot agree with this reasoning. In the Butler case, the Commission auditing department assessed premiums on wages specifically exempted from the Workmen's Compensation Act by statute. One employee, the City Manager, whose salary had been included contrary to the statute, was killed, and the Commission refused to pay the claim for death benefits on the theory that it lacked jurisdiction. This determination was upheld by the Supreme Court in an opinion stating, "[i]f the commission had no jurisdiction given it by law to make any award in favor of petitioner, and jurisdiction to make such an award cannot be conferred on it by estoppel, it did the only thing legally possible in denying compensation." Jurisdiction in the instant case was established not by statutory inclusion or exclusion, but by quasi-judicial determinations of facts made by the Commission in proceedings before it involving the same parties, which resulted in the audit reports. Administrative determinations which make

specific adjudications as to jurisdiction over the person or over the subject matter are subject only to direct and not collateral attack by parties to the action. The doctrine of res judicata is applicable to questions of jurisdiction as well as to other questions decided. 2 Am.Jur.2d Adm.Law § 491.

The petitioner's application for the writ of certiorari raised three questions concerning the lawfulness of the Commission's actions.

■ The first question we will consider is petitioner's contention that the Commission was arbitrary and capricious in failing to adjust petitioner's average monthly wage to reflect the adjusted wage determined by the Commission's audit reports. The auditing department had instructed the petitioner and his wife to report their salaries as $350 per person per month, plus a $30 per person per month board and lodging allowance, or a total of $380 per person per month. The petitioner· and his wife were actually paid a percentage of the gross income of the motel. The Commission audited the records of the motel at the end of the year and adjusted the premiums to include all of the salary earned on the basis of the percentage figure. This customarily amounted to more than the $380 per person per month that had been reported. The petitioner, however, reported his salary as $350 per month on the initial report he filed with the Commission. This figure was adjusted to $380 by the Commission in their award of December 10, 1964, to reflect the additional $30 board and lodging allowance. The petitioner protested the award of December 10, 1964, in a letter to the Commission. The protest was timely, and the Commission furnished petitioner with a petition for hearing form, calling his attention to the fact that it would be due in the Commission office 20 days from the date the protest was received, which was December 31, 1964. The petition for hearing was not timely filed. The petitioner relies upon Hershkowitz v. Arizona Highway Dept., 56 Ariz. 494, 109 P.2d 46 (1941),

which stated that the right to review by certiorari is not lost by failure to timely apply for a rehearing. The Hershkowitz case was expressly overruled in Ross v. Industrial Commission, 82 Ariz. 9, 307 P.2d 612 (1957), which held:

"* * * an injured workman must first file a petition for rehearing and procure a commission ruling thereon before he can have the matter reviewed in this court."

There is discussion of this in Flannery v. Industrial Commission, 3 Ariz.App. 122, 412 P.2d 297 (1966).

In the instant case the award establishing petitioner's average monthly wage was issued December 10, 1964. No petition for hearing was filed; the Commission was not given the opportunity to correct its errors, which must be done before this Court will entertain a writ of certiorari to review the lawfulness of the award. We are without jurisdiction to review the question of average monthly wage.

■ Petitioner's second question is whether his disability should be compensated as a scheduled disability to the right leg rather than as an unscheduled disability. On this issue the award of December 10, 1964, is res judicata. That award made a finding that petitioner sustained a twenty percent general physical functional disability as a result of the industrial accident. As we have pointed out, that award was not timely protested, nor was a petition for writ of certiorari timely filed for the review of that award, and we are without jurisdiction to consider this issue.

The Court is aware that counsel on appeal was not employed until the time for protest or petition for writ of certiorari of December 10, 1964, had expired.

■ The third question presented by the petitioner is whether the Commission erred in determining that petitioner suffered no loss of earning capacity, and that petitioner is indebted to the Commission for the temporary partial disability compensation paid to him from January 28, 1964, through November 25, 1964, as testimony at

the hearing (of January 26, 1965) revealed that petitioner drew his full salary during that period of time. We will consider the second part of this question first, since it is analogous to the two preceding issues. The award of December 10, 1964, which we have determined became final without protest, contained the finding that petitioner was entitled to temporary partial disability compensation from January 28, 1964, through November 25, 1964. This finding, too, became res judicata between the parties just as the findings of average monthly wage and of twenty percent general physical functional disability did. Awards of the Commission operate only from the date of their issuance, and an award may not be altered without first establishing facts justifying change. Hamlin v. Industrial Commission, 77 Ariz. 100, 267 P.2d 736 (1954). The award of April 19, 1965, did not and could not operate retroactively to change or adjust the findings and award of December 10, 1964, with regard to the temporary partial disability compensation.

 We return to the first part of this question, which is whether the Commission erred in determining that petitioner suffered no loss of earning capacity as a result of his twenty percent general physical functional disability. The employment contract makes no division of the duties between husband and wife, nor does it make a division of the fifteen percent of gross income between them. The record indicates that the petitioner, the husband-member of the co-management team, is no longer capable of producing either the quantity or type of work-service that he produced prior to his industrial injury. There is testimony that petitioner suffers residual disability and limitation in flexion of the spine, as well as a loss of nerve sensation in his right leg which necessitates the wearing of a leg brace to correct a "dropped foot." There is also testimony that the petitioner performed strenuous maintenance work at the motel prior to his injuries, and that he is no longer able to perform this. The Commission's finding that petitioner has suffered no loss of earning capacity is not supported by any evidence. The evidence indicates that the fact that the co-managers together earn the same percentage of the gross they earned prior to petitioner's injury is due to the increased production of petitioner's wife, and to a benevolent employer. The petitioner's reduced earning capacity must be evaluated realistically from the facts in evidence, using the tests set forth and discussed at length in Allen v. Industrial Commission, 87 Ariz. 56, 347 P.2d 710 (1959). The Commission must, as the end product of its investigation, decide whether in a competitive labor market the subject in his injured condition can probably sell his services and for how much. Phelps Dodge Corp., Morenci Branch v. Industrial Commission, 90 Ariz. 379, 368 P.2d 450 (1962). The circumstances of this case make such a determination more difficult than is usual, but not impossible.

The award is set aside for the reasons we have stated.

CAMERON, C. J., and STEVENS, J., concur.