699 P.2d 389

**COUNTY OF MARICOPA and Home Insurance Company, Petitioners,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Donald S. Ballard, Respondent Employee.**

**No. 1 CA–IC 2999.**

Court of Appeals of Arizona, Division 1, Department D.

April 11, 1985.

Moore & Long by Joseph L. Moore, Phoenix, for petitioners.

Sandra Day, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Charles M. Wilmer, Phoenix, for respondent employee.

## OPINION

KLEINSCHMIDT, Judge.

In this special action review of an industrial commission award granting benefits for time lost from work for medical treatment, the carrier raises the following issues:

1. Whether a July 8, 1981, notice of claim status became final because the claimant abandoned a request for hearing protesting it.

2. Whether the administrative law judge erred in awarding temporary compensation benefits because claimant's absences from work were compensated by sick leave pay equivalent to his regular wages.

3. Whether claimant failed to meet his burden of proving a causal relationship between the injury and his condition.

Claimant, Donald S. Ballard, filed a claim for worker's compensation benefits for an injury sustained April 24, 1981, while at work. On July 8, 1981, the carrier issued a notice of claim status accepting the claim for benefits but disallowing disability compensation because no time was lost from work in excess of seven days. On January 25, 1982, the carrier issued a notice of claim status terminating all benefits effective September 3, 1981, and determining that the injury resulted in no permanent disability. On February 19, 1982, claimant filed a request for hearing protesting both the July 8, 1981, and January 25, 1982, notices. The protest of the July 8, 1981, notice was untimely.

On March 22, 1982, the carrier issued a notice of claim status rescinding its January 25, 1982, notice. This notice indicated that claimant was continuing to receive medical treatment. On May 5, 1982, the commission sent a letter to the parties stating that a review of the file revealed that the carrier's March 22, 1982, notice appeared to resolve the issues in dispute. The letter further stated that unless notified to the contrary, the commission would assume that claimant had abandoned his right to a hearing on the matter. The claimant did not directly reply to this letter.

On June 21, 1982, the carrier issued another notice of claim status terminating all benefits without permanent impairment. On August 16, 1982, claimant sent a letter to the commission stating that he had lost time from work and continued to need medical treatments. He requested an investigation to determine compensation benefits for the time lost from work from the

injury and attending medical appointments. *See generally* A.R.S. § 23–1061(J).[1]

On August 31, 1982, claimant also filed a request for hearing protesting the June 21, 1982, notice. On September 22, 1982, the commission sent a letter to the parties stating that it could not determine whether the claimant was entitled to compensation and referred the matter to the hearing division. Thereafter, claimant withdrew his August 31, 1982, request for hearing. On December 6, 1982, a hearing was conducted and claimant testified to the time lost from work from the injury and subsequent medical treatments. Mr. Frank L. Russo, the employer's supervisor in charge of payroll, testified regarding the employer's sick leave policy.

The administrative law judge awarded 82.5 hours of compensation benefits for time lost from the injury and attending medical treatments subsequent to the injury. A supplemental decision affirming the award on review was issued and this special action followed.

## JURISDICTION

■ For the first time on appeal, the carrier argues that the administrative law judge lacked jurisdiction to determine whether claimant was entitled to benefits because claimant abandoned his request for hearing protesting a July 8, 1981, notice of claim status. As a general rule, failure to raise an issue before the administrative tribunal precludes appellate review. *See Stephens v. Industrial Commission,* 114 Ariz. 92, 559 P.2d 212 (App.1977). An exception exists if a jurisdictional defect is alleged. *Calixto v. Industrial Commission,* 126 Ariz. 400, 616 P.2d 75 (App.1980).

■ The carrier cites no authority to support its position that a notice of claim status that has been protested becomes *res judicata* if the protest is abandoned. Al-though the carrier's assertion may be correct, we find that the carrier has waived the issue.

On February 19, 1982, claimant filed a request for hearing protesting both the July 8, 1981, and January 25, 1982, notices of claim status.[2] The request for hearing was not withdrawn. The carrier received copies of the correspondence between claimant and the commission regarding the commission's attempt to administratively resolve the dispute pursuant to A.R.S. § 23–1061(J). However, the A.R.S. § 23–1061(J) request was not a response to the commission's letter.

■ The administrative procedure set forth in A.R.S. § 23–1061(J) provided claimant with an alternative manner of determining whether he was entitled to compensation. Although the commission determined it could not resolve the issue without a hearing, the hearing conducted encompassed the same issues that would have been litigated pursuant to the February 19, 1982, request for hearing. Even if the claimant abandoned the February 19, 1982, request for hearing, the carrier has waived the issue because it failed to assert the finality of the July 8, 1981, notice at the A.R.S. § 23–1061(J) hearing. The *res judicata* effect of a notice of claim status is an affirmative defense that the carrier should have raised at the A.R.S. § 23–1061(J) hearing on the issue of whether claimant was absent in excess of seven days from work. *Cf. Superlite Builders v. Industrial Commission,* 126 Ariz. 51, 612 P.2d 507 (App.1980).

## DOUBLE RECOVERY

Following the April 24, 1981, injury, claimant was absent from work on Monday, April 27, 1981; Tuesday, April 28, 1981, and Wednesday, April 29, 1981.

---

1. A.R.S. § 23–1061(J) provides:
   The commission shall investigate and review any claim in which it appears to the commission that the claimant has not been granted the benefits to which such claimant is entitled. If the commission determines that payment or denial of compensation is improper in any way, it shall hold a hearing pursuant to § 23–941 within sixty days after receiving notice of such impropriety.

2. Although the protest of the July 8, 1981, notice was untimely, the carrier never raised the issue in its request for review on appeal.

Claimant was also absent for four hours on Thursday, April 30, 1981, and did not work Friday, May 1, 1981, and Monday, May 4, 1981. On Tuesday, May 5, 1981, claimant returned to his regular employment duties. Between May 8, 1981, and June 7, 1981, claimant was absent 37.5 hours from work because he was attending medical appointments. Claimant received sick leave pay, which was equivalent to his regular wages, for all times he was absent from work. According to claimant, the April 24, 1981, injury resulted in a loss of accrued sick leave hours. Sick leave hours could not be converted into wages unless claimant was sick.

A.R.S. § 23–1062(B) states:

The first installment of compensation is to be paid no later than the twenty-first day after written notification by the commission to the carrier of the filing of a claim except where the right to compensation is denied. Thereafter, compensation shall be paid at least once each two weeks during the period of temporary total disability and at least monthly thereafter. Compensation shall not be paid for the first seven days after the injury. *If the incapacity* extends beyond the period of seven days, compensation shall begin on the eighth day after the injury, but *if the disability* continues for one week beyond such seven days, compensation shall be computed from the date of the injury.

(Emphasis added).

Noting some ambiguity in the last sentence of A.R.S. § 23–1062(B), the administrative law judge interpreted the terms "incapacity" and "disability" to mean the same thing. Specifically, he found:

Considering all of the evidence as a whole and also considering the provisions of *A.R.S.* § 23–1062, the undersigned finds that the applicant's incapacity extended beyond the period of the first seven days after his injury and that his disability continued for one week beyond

those seven days. This is based upon construing the Statute to mean that for purposes of computing the beginning of compensation, the words 'disability' and 'incapacity' mean the same thing and that the fact that the applicant must leave his job in order to get medical treatment which was reasonably required because of his industrial injury means that he has sustained an incapacity or disability within the meaning of *A.R.S.* § 23–1062 B and therefore, his compensation should be computed from the date of his injury.

The administrative law judge found that claimant's temporary compensation benefits commenced from the date of injury. Claimant was awarded 82.5 hours of temporary compensation, which represented the total time lost from work between the date of injury and June 7, 1982. In the supplemental award affirming the decision granting benefits, the administrative law judge indicated that claimant was entitled to receive both compensation benefits and sick leave pay because the sick pay was merely a benefit accumulated for past services rather than the injury. The supplemental decision also noted that the carrier improperly assumed that the threshold waiting period set out in A.R.S. § 23–1062(B) commenced with the claimant's disability. The administrative law judge found that the waiting period consisted of consecutive calendar days following the date of injury.

On appeal, the carrier attacks the award because claimant received double recovery: both sick leave pay and temporary compensation benefits. The carrier contends that the terms "incapacity" and "disability" as set forth in the last sentence of A.R.S. § 23–1062(B) should both be interpreted to mean loss of earning capacity. According to the carrier, claimant sustained no loss of earning capacity because he received sick leave pay equivalent to his regular wages while absent from work.[3]

**3.** The carrier does not raise the issue of whether the administrative law judge erred in finding claimant met the threshold seven day disability requirement set forth in A.R.S. § 23–1062(B) or in finding that claimant proved a disability extending one week beyond the seven days.

■ We agree with the carrier that the terms "incapacity" and "disability" both refer to loss of earning capacity. This court will look to prior and contemporaneous statutes in interpreting a statute whose meaning appears uncertain on its face and explain the meaning of the statute so that the statutory scheme is harmonious and consistent. *State ex rel. Larson v. Farley,* 106 Ariz. 119, 471 P.2d 731 (1970). The term "disability" as used in *Workmen's Compensation,* § 23–901 *et seq.* refers to injuries which result in an impairment of earning power. *Edwards v. Industrial Commission,* 3 Ariz.App. 290, 413 P.2d 800 (1966). In *Alsbrooks v. Industrial Commission,* 118 Ariz. 480, 484, 578 P.2d 159, 163 (1978), the supreme court discussed the term "disability" appearing in A.R.S. § 23–1044(E),[4] stating:

> [W]hen the statute says 'disability,' it means earning capacity disability even though the effect upon the workman's earning capacity may be minimal.

■ The carrier argues that claimant sustained no loss in earning capacity because he received sick leave pay while absent from work. Under our Worker's Compensation Act the degree of temporary partial disability is calculated by comparing "wages earned before the injury" with the "wages which the injured person is able to earn thereafter." A.R.S. § 23–1044(A). Thus, actual earnings before the injury are compared with earning capacity after the injury.[5] It is apparent that actual earnings are not the same as earning capacity. While actual post-injury earnings will create a presumption of commensurate earning capacity, the presumption may be overcome by evidence showing that the actual earnings do not fairly reflect claimant's earning capacity. *Continental Casualty Co. v. Industrial Commission,* 21 Ariz. App. 561, 521 P.2d 1019 (1974).

■ There are a number of reasons why an employee who receives the same or higher wages after an injury than he earned before the injury may nevertheless have suffered a loss of earning capacity. *See* 2 Larson, *Worker's Compensation Law* § 57.31 *et seq.* (1983); Annot., 149 A.L.R.2d 413, 438 (1944). Wages paid an injured employee out of sympathy, or in consideration of his long service with the employer, clearly do not reflect his actual earning capacity, and for purposes of determining permanent disability are discounted. *Martin v. Industrial Commission,* 4 Ariz. App. 547, 422 P.2d 178 (1967). The same is true if the work for which claimant is paid is "made work." *See Roberson v. Industrial Commission,* 98 Ariz. 336, 404 P.2d 419 (1965) (claimant, an apprentice steel worker, was given a job attending a coffeepot after being injured. The court held that he was entitled to temporary compensation benefits during this period until he was ready to return to regular work.) The issue in these situations is whether the wages received were really earned for regular work performed. In the instant case, the sick leave pay claimant received was for periods of time when claimant was unable to perform his regular employment duties because he was suffering from the affects of the injury or was receiving treatment for the injury.

■ Moreover, the ordinary meaning of the word "wages" as it applies to A.R.S. § 23–1044(A)[6] is:

duled impairment. *Alsbrooks v. Industrial Commission,* 118 Ariz. at 483, 578 P.2d at 162.

4. A.R.S. § 23–1044(E) provides:
 In case there is a previous disability, as the loss of one eye, one hand, one foot or otherwise, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury. This statute has been interpreted to mean that a preexisting disabling condition converts a subsequent scheduled impairment into an unsche-

5. A comparison of actual earnings and earning capacity is also made in determining the degree of permanent disability. A.R.S. § 23–1044(C) and (D).

6. A.R.S. § 23–1044(A) provides:
 For temporary partial disability there shall be paid during the period thereof sixty-six and two-thirds per cent of the difference between the

The value received for the duties and labors which a workman performs, i.e., the value received for services actually rendered.

*Parise v. Industrial Commission,* 16 Ariz. App. 177, 179, 492 P.2d 426, 428 (1971). We believe that sick leave benefits are not "wages" in the ordinary sense because the employee did not actually work the hours for which he received wages. *Cf. Parise v. Industrial Commission, supra,* (receipt of unemployment benefits did not constitute wages which the claimant was able to earn after the injury and were not deductible in computing the amount of temporary compensation benefits under the law as it existed prior to January 1, 1969). In the present case, the evidence indicated that sick leave benefits constituted a fringe benefit or incident of employment.

The Arizona Supreme Court has held time and again that the workmen's compensation laws should be liberally construed so as to give the worker every benefit to which he is rightly entitled. *Fullen v. Industrial Commission,* 122 Ariz. 425, 595 P.2d 657 (1979). Lacking a clear expression of legislative intention, we will not read into A.R.S. § 23–1044(A), which sets forth the recovery for temporary compensation, a limitation which is not there. Indeed, the legislature has expressly provided in that very provision that unemployment benefits received during a period of

temporary partial disability shall be considered as "wages able to be earned" for the purpose of measuring benefits. There is no such proviso for sick leave benefits. The remedy for the possible evils of double recovery lies exclusively with the legislature. *Cf.* Annot., 96 A.L.R.2d 941 (1964); *Parise v. Industrial Commission,* 16 Ariz. App. 177, 492 P.2d 426 (1971). There is no provision in our compensation statute forbidding benefits to an injured workman on the ground that he is receiving sick leave pay from his employer as an incident to his work. In the exercise of sound judicial discretion, it is important that the law not be amended by judicial construction. *Tovrea Packing Co. v. Tapia,* 63 Ariz. 503, 163 P.2d 852 (1945). Therefore, we find that it is not incongruous to receive sick leave pay and temporary disability benefits.[7]

## MEDICAL PROOF

Lastly, the petitioners argue that the claimant failed to sustain his burden of proving through expert medical testimony that the industrial accident caused the injury for which the medical treatment was needed. They cite *Western Bonded Products v. Industrial Commission,* 132 Ariz. 526, 647 P.2d 657 (App.1982). This hypertechnical argument was raised for the first time in a supplemental memorandum

---

wages earned before the injury and the wages which the injured person is able to earn thereafter. Unemployment benefits received during the period of temporary partial disability shall be considered wages able to be earned.

7. The carrier correctly notes that the cases relied upon by the administrative law judge in his supplemental decision pertain to whether sick leave pay should be credited against an award. *See Pet, Inc. Dairy Division v. Roberson,* 329 So.2d 516 (Miss.1976); *Robidoux v. Uniroyal, Inc.,* 116 R.I. 594, 359 A.2d 45 (1976). While it is true that the question of whether an employer is entitled to a credit for wages against an ultimate award of compensation is different than the issue of whether claimant is entitled to temporary disability benefits, case law which holds that sick leave pay is not credited against an award supports our holding. But *see Roberson v. Industrial Comm'n,* 98 Ariz. 336, 339, 404 P.2d 419, 421 (1965), which credited the "make-work" wages received against the compensation pay-

ments due. We need not decide the issue of whether the sick leave must be credited to compensation because that issue was not directly raised or adequately addressed.

If the payment of wages is intended to be in lieu of compensation, credit for wages is allowed. A credit is usually disallowed for any kind of sick pay for which it can be said that the claimant's entitlement to the payment is based upon past service rather than on the injury itself. *See* 2 Larson, *Worker's Compensation Law* § 57.46 at 10–164.15. The evidence indicates that claimant would receive sick leave benefits whether he was unable to work due to an industrial or non-industrial illness, and that claimant's entitlement to sick leave pay was based upon accumulated past service. Thus, sick leave pay was not intended as a substitute for compensation benefits, but rather constituted a fringe benefit or incident of employment.

to the petitioners' request for an administrative review. The focus of the A.R.S. § 23–1061(J) hearing was whether the claimant met the threshold fourteen day disability requirement under A.R.S. § 23–1062(B). The petitioner carrier had already accepted the claimant's compensation claim for the automobile accident. *Western Bond Products* does not apply in this procedural context. Furthermore, the record is sufficient to show that the claimant's automobile accident caused the need for physical therapy. *See* Initial Physical Therapy Evaluation & Treatment Plan.

For the foregoing reasons, the award is affirmed.

BROOKS, J., concurs.

EUBANK, Judge, dissenting.

While I agree with the majority on the jurisdictional and medical proof issues, I disagree with them on the double recovery issue. The majority in essence holds, under the facts here, that claimant's earned sick leave should not be considered as "wages," pursuant to A.R.S. §§ 23–1041, 23–1044, and that claimant is entitled to receive his sick pay (which equals his regular pay) plus 82.5 hours of compensation from the petitioners (double recovery). I disagree.

In considering what constitutes "wages" for workers' compensation purposes, consideration must first be given to the general policy underlying our workers' compensation laws. The purpose of industrial compensation is to compensate an employee for lost earning capacity, *Maness v. Industrial Commission*, 102 Ariz. 557, 434 P.2d 643 (1967); *Whyte v. Industrial Commission*, 71 Ariz. 338, 227 P.2d 230 (1951); the intention is not to make the employee whole for the loss, but to prevent him and his dependents from becoming public charges during a period of disability and to take care of the major portion of the financial loss during such a period. *See Powell v. Industrial Commission*, 104 Ariz. 257,

451 P.2d 37 (1969); *Inspiration Consolidated Copper Co. v. Smith*, 78 Ariz. 355, 280 P.2d 273 (1955).

The carrier argues that claimant sustained no loss in earning capacity because he received sick leave pay while absent from work. Under our Workers' Compensation Act the degree of temporary partial disability is calculated by comparing "wages earned before the injury" with the "wages which the injured person is able to earn thereafter." A.R.S. § 23–1044(A). Thus, actual earnings before the injury are compared with earning capacity after the injury.[1] It is apparent that actual earnings is not the same as earning capacity. While actual injury earnings will create a presumption of commensurate earning capacity, the presumption may be overcome by evidence showing that the actual earnings do not fairly reflect claimant's earning capacity. *Continental Casualty Company v. Industrial Commission*, 21 Ariz.App. 561, 521 P.2d 1019 (1974). In the instant case, the administrative law judge found:

2. Following the industrial injury the applicant lost no time from work on the day of the injury but within the first week missed four and one-half days. The applicant was not disabled from work at any time following May 4, 1981, but took time off from work for medical treatment on many occasions. These absences from work for all purposes add up to ten and a half days.

\* \* \* \* \* \*

4. The applicant received sick leave pay for the hours lost from work after his disability ended but while he was receiving treatment for his injury.

There is no other finding either in the award or the supplemental award that overcomes the *Continental Casualty Co.* presumption. Thus, we must consider the question whether sick leave pay constitutes wages under the facts here. The Workers' Compensation Act does not define "wages" as used in A.R.S. § 23–1041, *et seq.*, which deals with the amount of compensation

1. A comparison of actual earnings and earning capacity is also made in determining the degree

of permanent disability. A.R.S. § 23–1044(C) & (D).

payable to a claimant under the act. However, case law has filled the void. In *Moorehead v. Industrial Commission,* 17 Ariz.App. 96, 495 P.2d 866 (1972) (where the question was whether the employee's travel allowance should be included within the average monthly wage determination), this court, after considering *Matlock. v. Industrial Commission,* 70 Ariz. 25, 215 P.2d 612 (1950) (where average monthly wage was held to include true value of house, utilities, milk, butter, eggs and meat furnished employee by employer) and *Pettis v. Industrial Commission,* 91 Ariz. 298, 372 P.2d 72 (1962) (where the "saw rental" was properly deducted from the average monthly wage computation because "compensation is based upon the wage under the contract of hire." 91 Ariz. at 303, 372 P.2d at 76), said:

> From the Pettis opinion it is clear that in Arizona not every payment made to the employee by the employer constitutes "wages" for purposes of computing the injured employee's average monthly wage. There the payment to the employee for the use of his saw was held not to be a part of his "wage under the contract of hire." On the other hand, from the Matlock opinion it is clearly evident that payments or benefits conferred upon an employee in return for his labor and services are includable in computing the average monthly wage, even though these payments or benefits do not on their face purport to be "wages". Although the benefits provided in Matlock were not in the form of money, it is our opinion that the Arizona Supreme Court would have reached the same result had the payments been in the form of a money reimbursement to Matlock for sums expended by him for such purposes. From the foregoing, it might be argued that the transportation allowance in this case should be considered the same as the extra benefits provided to the employee in Matlock, and thus should constitute a part of his "wages" for average monthly wage computation purposes. We do not think so. An important distinction must be recognized to exist between the "room and board" benefits provided in Matlock and the travel expense allowance provided in this case. In Matlock the extra benefits provided by the employer had the effect of helping Matlock meet his ordinary day-to-day requirements for food and lodging—requirements which would continue substantially unchanged whether Matlock was employed or not. On the other hand, the extra benefits here provided by the employer are directly related to meeting special transportation expenses entailed by reason of petitioner's employment—expenses which will cease with the cessation of petitioner's employment. While an unemployed worker must have a roof over his head, and continue eating regardless of whether employed or unemployed, he would no longer be required to expend money for travel to the jobsite if he were no longer employed. We think the principle to be derived from the foregoing is that "wages" do not include amounts paid to the employee to reimburse him for employment-related expenditures of a nature which would not be incurred but for his employment. Such payments are simply not intended as compensation for services rendered. Before any part of such allowances or reimbursements can be considered as a part of the employee's "wages" there should be some showing that the payments are more than sufficient to reimburse the employee for the work-related expense so that in effect the excess can be considered as extra compensation to the workman for his services performed.

17 Ariz.App. at 99, 495 P.2d at 869.

In *Still v. Industrial Commission,* 27 Ariz.App. 142, 551 P.2d 591 (1976), we considered whether the determination of the employee's average monthly wage should include a credit for the amount of money his employer was required to contribute on his behalf to a Union Health, Welfare and Pension fund, and held that it should not be included as wages. Relying on *Barron v. Ambort,* 64 Ariz. 209, 167 P.2d 925 (1946) we said:

Whether the benefits are obtained by virtue of a union agreement, as here, or by the effort of government, as in the case of social security contributions and unemployment insurance contributions, they are clearly obtained by "collective effort" and not by the individual effort of the employee. They are also not paid to the employee by the employer and would not be recoverable in an action at law by him against the employer.

27 Ariz.App. at 145, 551 P.2d at 594.

In *Industrial Commission v. Jordan*, 9 Ariz.App. 23, 448 P.2d 895 (1968), we held that "tips" received by waitresses are not wages within A.R.S. § 23–1041 because they "are clearly not a form of remuneration subject to negotiation or recoverable in an action at law...." We reached the same conclusion in *Springer v. Industrial Commission*, 23 Ariz.App. 429, 533 P.2d 1166 (1975). Both of these cases turn on our Supreme Court's opinion in *Barron v. Ambort, supra,* which requires that "wages", as used in A.R.S. § 23–1041(A), include earnings that result from the personal effort of the employee and which would be recoverable by the employee in an action at law against his employer. In *Scott v. Industrial Commission*, 122 Ariz. 169, 593 P.2d 919 (App.1978), two judges of this court attempt to reverse six judges of this court by overruling *Jordan* and *Springer* by holding that "tips" received by a taxi driver constitute wages pursuant to A.R.S. § 23–1041. The rationale was that the tips constituted real economic gain to the drivers. Thus, *Scott* supports my dissent also.

Our case of *Insurance Co. of North America v. Industrial Commission*, 116 Ariz. 21, 567 P.2d 337 (App.1977), set aside the award finding the average monthly wage of a corporate employee because the evidence lacked any definite contractual liability on the part of the corporation.

The facts *sub judice* are that claimant earned his accrued sick leave entitlement as a part of his regular employment; that he had to actually use his sick leave compensation in order to gain any benefit from it, and that he received sick leave compensation in the full amount of his wage, from the same payroll account, during the time he was not drawing his regular wages. In my opinion, under the circumstances, such sick leave compensation must be treated as wages under A.R.S. § 23–1041, *et seq.,* and A.R.S. § 23–1044 in particular. My conclusion is based on the above cited cases. *Pettis* and *Barron,* in particular point the way. Here we have a benefit conferred on the claimant as a result of his employment contract with the county. The sick leave compensation was earned by claimant, and if not paid, it was recoverable by an action at law. *Barron v. Ambout, supra. Cf. Field v. Industrial Commission*, 73 Ariz. 133, 238 P.2d 953 (1951). *See also, Powell v. Industrial Commission*, 104 Ariz. 257, 451 P.2d 37 (1969).

The carrier correctly notes that the cases relied on by the administrative law judge in his supplemental decision pertain to whether sick leave should be credited against an award. (*Pet, Inc. Dairy Division v. Roberson*, 329 So.2d 516 (Miss.1976); *Robidoux v. Uniroyal, Inc.*, 116 R.I. 1594, 359 A.2d 45 (1976)). These cases do not pertain to the question of whether sick leave compensation equal to wages constitutes "wages which the injured person is able to earn thereafter." A.R.S. § 23–1044(A).

Thus, under the facts here the claimant is not entitled to double recovery. I would set the award aside.