971 P.2d 186

Curtis PROUDFOOT, Petitioner,

v.

The INDUSTRIAL COMMISSION
OF ARIZONA, Respondent,

Citizens Utilities, Respondent Employer,

Continental Insurance, Respondent
Carrier.

No. 1 CA–IC 97–0093.

Court of Appeals of Arizona,
Division 1, Department B.

Feb. 26, 1998.

Redesignated as Opinion and Publication
Ordered March 17, 1998.

Stephen L. Weiss and Toby Zimbalist, Phoenix, for Petitioner Employee.

Anita R. Valainis, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for Respondent.

Jones, Skelton & Hochuli by Bonnie E. Elber, Phoenix, for Respondents Employer and Carrier.

## OPINION

EHRLICH, Judge.

This is a special action review of an Industrial Commission award granting rearrangement. One issue is presented on appeal: whether a job which is medically contraindicated for an individual worker can be used to establish that worker's post-injury earning capacity.

In this case, Citizens Utilities petitioned to rearrange the unscheduled permanent partial disability benefits of Curtis Proudfoot. It presented evidence that Proudfoot had returned to work in his pre-injury occupation as a lineman earning wages substantially in excess of his average monthly wage. Because the post-injury earnings presumption applies in this case, reasonable evidence supports the finding of the administrative law judge ("ALJ") that Proudfoot no longer has a loss of earning capacity ("LEC") and is not entitled to unscheduled permanent partial disability benefits. For this reason, we affirm the award.

Rearrangement is governed by ARIZ.REV. STAT. ANN. ("A.R.S.") section 23–1044(F) (1995):

> For the purposes of subsection C of this section, the commission shall, in accordance with the provisions of § 23–1047 when the physical condition of the injured employee becomes stationary, determine the amount which represents the reduced monthly earning capacity, and upon such determination make an award of compensation which shall be subject to change in any of the following events:
>
> * * *
>
> 3. Upon a showing that his earning capacity has increased subsequent to such findings and award.

This permits rearrangement when there is evidence that the claimant's earning capacity has increased since the previous award. In this case, the previous award was entered on February 21, 1991, determining that Proudfoot had an earning capacity of $500 per month.

In establishing residual earning capacity, the object is to determine as nearly as possible whether the claimant can sell his services in the open, competitive labor market and for how much. *Davis v. Industrial Comm'n,* 82 Ariz. 173, 175, 309 P.2d 793, 795 (1957). Evidence of a claimant's post-injury earnings raises a presumption of post-injury earning capacity. *Maness v. Industrial Comm'n,* 102 Ariz. 557, 559, 434 P.2d 643, 645 (1967); *County of Maricopa v. Industrial Comm'n,* 145 Ariz. 14, 19, 699 P.2d 389, 394 (App.1985). This presumption may be overcome by evidence that the claimant's actual earnings did not accurately reflect his earning capacity. *County of Maricopa,* 145 Ariz. at 19, 699 P.2d at 394.

It is the claimant's burden to rebut the post-injury earnings presumption with evidence that demonstrates that the source of new income is an unreliable indicator of his earning capacity. *Laker v. Industrial Comm'n,* 139 Ariz. 459, 462, 679 P.2d 105, 108 (App.1984). This burden may be met by showing that a job secured by the claimant is created by the employer out of sympathy, *Yount v. Industrial Comm'n,* 20 Ariz.App. 527, 530, 514 P.2d 280, 283 (1973), by demonstrating that the post-injury employment is temporary and that the industrial impairment will restrict subsequent earnings, *Shroyer v. Industrial Comm'n,* 98 Ariz. 388, 395, 405 P.2d 875, 880 (1965),[1] or when continued employment would be deleterious to the claimant's health. *Midland–Ross Corp. v. Industrial Comm'n,* 107 Ariz. 311, 313–14, 486 P.2d 793, 795–96 (1971). *See also* 4 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW §§ 57.30 to

---

1. Proudfoot has cited a number of older supreme court cases in support of his position that the amputation of his right leg is presumptively earning-capacity disabling without regard to his actual earnings. These cases pre-date the 1968 enactment of the rearrangement statute, which provides for recalculation of a disabled worker's disability compensation following an actual change in earning capacity. A.R.S. § 23–1044. *See generally Doles v. Industrial Comm'n,* 167 Ariz. 604, 608, 810 P.2d 602, 606 (App.1990).

57.35, at 10–204 to 10–251 (1997) (discussing evidence which will overcome post-injury earnings presumption).

In *Midland–Ross,* the claimant sustained an industrial back injury and underwent surgery. After his condition became stationary with an unscheduled permanent partial impairment, he returned to his former work at his former wage. Although he performed his work satisfactorily for months, he endured almost constant pain and relied on a co-employee to help him. On his treating physician's advice, he obtained lighter work. At an LEC hearing, the claimant's physician testified that the requirements of the former job made it unsuitable for the claimant in view of his surgery.

Following an award for an LEC, the employer appealed, arguing that the post-injury earnings presumption should apply because the claimant had returned to and satisfactorily performed his pre-injury employment. The supreme court stated:

> [T]here is such a presumption where the return to work is under normal conditions. However, in the instant case, the return to work was accompanied by almost constant pain and a coemployee did much of the lifting. Moreover, the employee's doctor advised against a continuance of these conditions of labor. The presumption must retire in the face of positive evidence.

107 Ariz. at 313, 486 P.2d at 795.

■ In this case, the evidence presented was insufficient to rebut the post-injury earnings presumption. Although Proudfoot was at times uncomfortable while working, he did not testify that he worked in constant pain, nor did he express an affirmative desire for lighter work. Although Dr. Fanto recommended a change of occupation, Dr. Maric stated that there was no medical reason that Proudfoot could not work as a lineman.

■ Proudfoot argues that the ALJ should not have considered his post-injury earnings as a lineman when determining his residual earning capacity because the medical evidence established that line work is unsuitable for him. Earning capacity may be shown by evidence of job opportunities which the claimant could reasonably be expected to perform, considering his physical capabilities, education and training. *See Germany v. Industrial Comm'n,* 20 Ariz.App. 576, 580, 514 P.2d 747, 751 (1973). In this case, there is no dispute that the physical requirements for the lineman position exceed the recommendations of both Drs. Fanto and Maric with regard to climbing. In fact, both doctors agree that Proudfoot places himself at greater risk of injury by continuing to work as a lineman. Conversely, Proudfoot testified that he has successfully performed line work for over four years and has no intention of quitting even though the work is more difficult with a prosthesis. Proudfoot explained that he receives intangible benefits from continuing to do this work, such as increased self-esteem. Based on this history, Proudfoot has successfully sold his services in the open labor market and reasonably can be expected to perform line work despite his impaired physical condition. We believe that this precludes a finding of unsuitability at this time.

Proudfoot also argues that the ALJ erred by failing to specifically consider the factors in A.R.S. section 23–1044(D):

> In determining the amount which represents the reduced monthly earning capacity . . . consideration shall be given, among other things, to any previous disability, the occupational history of the injured employee, the nature and extent of the physical disability, the type of work the injured employee is able to perform subsequent to the injury, any wages received for work performed subsequent to the injury and the age of the employee at the time of injury.

Citizens responds that the ALJ did consider all of these factors, although not together in one finding. It adds that, if Proudfoot had wanted a more specific finding, he should have sought it in his request for review.

We agree with Citizens. Evidence concerning all of these factors was placed in evidence at the hearings. We have also reviewed Proudfoot's April 11, 1997, Request for Review, which does not make any specific request for an A.R.S. section 23–1044(D) finding. *See Norsworthy v. Industrial Comm'n,* 24 Ariz.App. 73, 74, 535 P.2d 1304,

1305 (1975) (this court will not consider issue on appeal not raised before Commission).

Rearrangement remains available to Proudfoot should his physical condition deteriorate, rendering it impossible for him to continue performing the line work that he enjoys. Until such necessity arises, for all of the foregoing reasons, we affirm the award.

GERBER and McGREGOR, JJ., concur.