NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

TANYA DAVIS, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

MCKELVEY TRUCKING, *Respondent Employer*,

NATIONAL INTERSTATE INSURANCE CO, *Respondent Carrier*.

No. 1 CA-IC 14-0057
FILED 2-19-2015

Special Action - Industrial Commission

ICA Claim No.  20083-520396
Carrier Claim No. 1002 388
Joseph L. Moore, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Tanya Davis, Phoenix
*Petitioner Employee*
*In Propria Persona*

Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent*

Klein, Doherty, Lundmark, Barberich & LaMont, PC, Tucson
By Eric W. Slavin
*Counsel for Respondents Employer and Carrier*

---

**MEMORANDUM DECISION**

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge John C. Gemmill and Judge Kenton D. Jones joined.

---

**K E S S L E R,** Judge:

¶1        This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review for no loss of earning capacity ("LEC").   One issue is presented on appeal: whether the administrative law judge's ("ALJ's") finding that the petitioner employee ("claimant") had no LEC is reasonably supported by the record. Because we find that the evidence of record reasonably supports the ALJ's award, we affirm.

**FACTUAL AND PROCEDURAL HISTORY[1]**

¶2        On December 1, 2008, the claimant was employed by the respondent employer, McKelvey Trucking ("McKelvey"), as an over-the-road driver.   She was injured while adjusting the tandems (rear dual tires) on her truck's trailer. The claimant developed tingling in her neck and her

---

[1] Claimant filed an untitled motion seeking to supplement the record with evidence related to the most recent flare-up from her injury and documenting her time off work as a result.  The records, however, all relate to an alleged flare-up in 2015, after the hearings and award in this matter.  Thus, we will not consider them as part of this appeal.   Records not considered by the ALJ below are not properly part of the certified record on appeal before this Court and we will not consider documents outside the certified record. *See, e.g., Wood v. Indus. Comm'n*, 126 Ariz. 259, 262, 614 P.2d 340, 343 (App. 1980); *Shockey v. Indus. Comm'n*, 140 Ariz. 113, 116 n.1, 680 P.2d 823, 826 n.1 (App. 1983).  Thus, claimant's motion to supplement the record with additional evidence is denied.  Nothing in this ruling prevents the claimant from introducing such records in a later proceeding before the commission on a petition for rearrangement.  *See infra* ¶ 10.

left shoulder, arm, and leg. By the following day, she was in a lot of pain and sought medical treatment. She filed a workers' compensation claim which was accepted for benefits.

**¶3**        Following an independent medical examination ("IME"), the claimant's claim was closed with no permanent impairment. She timely protested, and following ICA hearings for medical testimony, an ALJ entered an award finding that the claimant's industrial injury had resulted in a permanent impairment. Based on the finding of a permanent impairment, the ICA entered its findings and award for a 32.19% LEC and awarded the claimant $328.94 per month in unscheduled permanent partial disability benefits.

**¶4**        McKelvey and National Interstate Insurance Company (collectively "respondents") timely protested the ICA's award, and after a hearing, the ALJ entered an award for an unscheduled permanent partial disability from October 4, 2011 until starting her new job, but no LEC.   The claimant requested administrative review, but the ALJ summarily affirmed the award.    The claimant next brought this appeal.   This Court has jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2) (2003), 23-951(A) (2012), and Arizona Rules of Procedure for Special Actions 10.[2]

## DISCUSSION

**¶5**        The claimant argues that her residual industrially-related symptoms fluctuate, causing her to lose time from work and to have an LEC. The burden of proving an LEC is on the claimant. S*ee, e.g., Zimmerman v. Indus. Comm'n,* 137 Ariz. 578, 580, 672 P.2d 922, 924 (1983).  In that regard, it is the claimant's burden to present sufficient evidence and testimony to establish her LEC claim.  *Id.*  In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings but review questions of law de novo. *See Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003).  We consider the evidence in a light most favorable to upholding the ALJ's award.  *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App. 2002).

**¶6**        In establishing an LEC, the object is to determine, as nearly as possible, whether the claimant can sell her services in the open, competitive

---

[2] We cite the current version of applicable statutes and rules because no revisions material to this decision have since occurred.

labor market and for how much. *Davis v. Indus. Comm'n*, 82 Ariz. 173, 175, 309 P.2d 793, 795 (1957). Evidence of a claimant's post-injury earnings raises a presumption of post-injury earning capacity, which may be overcome by evidence that the claimant's actual earnings do not accurately reflect her earning capacity. *County of Maricopa v. Indus. Comm'n*, 145 Ariz. 14, 19, 699 P.2d 389, 394 (App. 1985).

¶7 The claimant testified that she had held a commercial driver's license since 1988. She drove buses for the City of Oakland for eight years before becoming an over-the-road driver. After attending truck driving school, the claimant drove trucks for a year before being hired by Greyhound where she drove buses for eight more years. The claimant next drove trucks for McKelvey until her industrial injury. She testified that following her injury, her treating physician, Dr. Jackson, advised her not to return to the heavy lifting required by her work at McKelvey.

¶8 At the time of the ICA hearing, the claimant was working as a bus driver for the City of Phoenix through its contract with First Transit. She testified that she was hired at the beginning of December 2013 and would remain in a probationary period until the beginning of March 2014. The claimant works full-time, forty hours per week, although she had missed a couple of days of work when her residual industrial symptoms flared up. She explained that Dr. Jackson gives her Botox injections every three months for her industrially-related residuals under her supportive care award. The claimant testified that the injections provide good relief although they start to diminish toward the three-month mark and that is when her symptoms flare up.

¶9 The respondents presented a labor market report from Richard Prestwood, who stated that new drivers at claimant's job receive thirty-six hours of training at a training wage, after which they earn $12.62 per hour or a roll-back wage of $11.39.[3] Based on the rolled-back wage, the claimant's monthly earning capacity at her job is $1,974.11, which exceeds her average monthly wage of $1,858.11. For that reason, the claimant did

---

[3] Calculating post-injury earnings requires a "roll back" to date of injury wage levels in order to obtain an accurate comparison of the claimant's average monthly wage before the injury and her earning capacity after the injury. *See Whyte v. Indus. Comm'n*, 71 Ariz. 338, 346, 227 P.2d 230, 235 (1951).

not overcome the post-injury earnings presumption and establish an LEC and entitlement to permanent disability benefits.

¶10 We recognize the claimant's concern with regard to her symptomatic fluctuations. If her condition should deteriorate in the future to the point that she cannot perform the essential functions of the bus driver job, she may then file a petition for rearrangement. *See* A.R.S. § 23-1044(F) (Supp. 2014) (upon a showing of a reduction in earning capacity causally related to the industrial injury, a claimant may petition to rearrange their permanent disability benefits).

**CONCLUSION**

¶11 For the reasons stated, we affirm the ALJ's award.



Ruth A. Willingham · Clerk of the Court
FILED: ama